1 │ PETER J. SALMON (SBN 174386)
CUONG M. NGUYEN (SBN 248586)
2 │ ERIC TSAI (SBN 273056)
PITE DUNCAN, LLP
3 │ 4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
4 │ SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
5 │ FACSIMILE: (619) 590-1385
E-MAIL: etsai@piteduncan.com

6

7 │ Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION

*FILED*

*DEC - 3 2012*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8 │ **UNITED STATES DISTRICT COURT**

9 │ **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

10 │ AYAN KAI ROBERTS, KERMANISHA
SANDERS,                                        Case No. **C12-6119**

11 │                                               **NOTICE OF REMOVAL OF ACTION**

Plaintiffs,

12 │                                               **[12 U.S.C. § 1452(f)]**

13 │       v.

14 │ DWAYNE BARTELS, BARTELS
PROPERTY MANAGEMENT, JACK                           **FILE BY**
BURNS, SR., JACK BURNS, JR.,                         **FAX**
15 │ SECURITY PACIFIC REAL ESTATE; IRA
G. ROSS, SR., FEDERAL HOME LOAN
16 │ MORTGAGE CORPORATION, and its
successors and assigns, and DOES 1-XX,
17 │ inclusive,

18 │           Defendants.

19 │       **TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND**

20 │ **THEIR ATTORNEYS OF RECORD:**

21 │       **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1331 & 1442, and 12 U.S.C. §

22 │ 1452(f), Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac")

23 │ hereby gives notice of the removal of this action from the Superior Court of California in and for

24 │ Contra Costa County, where it was pending, to the United States District Court for the Northern

25 │ District of California. As grounds for this removal, Freddie Mac shows unto the Court the

26 │ following:

27 │       1.      The Plaintiffs AYAN KAI ROBERTS and KERMANISHA SANDERS, commenced

28 │ this action against Freddie Mac and others in the Superior Court of California for Contra Costa

1  County, on or about April 20, 2012 as Case No. MSC11-02181("State Court Action"). Plaintiffs'
2  Complaint alleges various causes of action against Freddie Mac and others in connection with certain
3  real property known as 556 Eighth Street, Upper Unit, Richmond, CA 94801.

4      2.    Freddie Mac is a United States corporation chartered by an Act of Congress organized
5  and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, et seq.,
6  with its principal place of business located in McLean, Virginia.

7      3.    12 U.S.C. § 1452(f) provides that Freddie Mac "shall be deemed to be an agency
8  included in sections 1345 and 1442 of such Title 28." Section 1452(f) of Title 12 further provides,
9  in pertinent part, that any civil action in a state court to which Freddie Mac is a party may, at any
10  time before trial, be removed to the appropriate United States District Court.

11      4.    28 U.S.C. § 1442(a) does not require Freddie Mac to notify or obtain the consent of
12  any other defendant in this action in order to remove the entire case to federal court. See 28 U.S.C.
13  1442(a); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) (stating that
14  "[w]hereas all defendants must consent to removal under section 1441…, a federal officer or agency
15  defendant can unilaterally remove a case under section 1442…") (citations omitted); Ely Valley
16  Mines, Inc. v. Hartford Accident & Indemnity Co., 644 F. 2d 1310, 1315 (9th Cir. 1981) (stating that
17  "§ 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants
18  must join in the removal petition").

19      5.    Freddie Mac is a party to the State Court Action as referenced above, and no trial of
20  the action has yet taken place. The United States District Court for the Northern District of
21  California is the federal judicial district and division embracing Contra Costa County in which the
22  property at issue in this case is situated. See 28 U.S.C. § 84(a). Freddie Mac is therefore entitled
23  to remove that action to this Court. Attached hereto as **Exhibit A,** and incorporated by reference
24  herein, are copies of all records and proceedings from the State Court Action including the Summons
25  and Complaint.

26      6.    Concurrently with the filing of this Notice of Removal, by means of the Notice to
27  Adverse Parties of Removal filed in the State Court Action and attached hereto as **Exhibit B,**
28  Freddie Mac is giving written notice to all known parties, and to the Superior Court of California in

1 and for Contra Costa County, of (i) this removal; (ii) the fact that this case is to be docketed in this

2 Court; and (iii) that this Court shall hereafter be entitled to grant all relief to Freddie Mac as is proper

3 under the circumstances, all in accordance with 12 U.S.C. § 1452 and such local rules as may be

4 applicable.

5                               Respectfully Submitted,

6                               PITE DUNCAN, LLP

7

8 Dated: December 3, 2012

                              ERIC TSAI

9                               Attorneys for Defendant

                              FEDERAL HOME LOAN MORTGAGE

10                               CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF REMOVAL OF ACTION**

# EXHIBIT A

## TO THE FIRST AMENDED COMPLAINT

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DWAYNE BARTELS, BARTELS PROPERTY MANAGEMENT, JACK BURNS, SR., JACK BURNS, JR.
SECURITY PACIFIC REAL ESTATE, IRA G. ROSS, SR., FEDERAL HOME LOAN MORTGAGE
CORPORATION, and it's successors and assigns, and DOES I-XX, inclusive

### YOU ARE BEING SUED BY PLAINTIFF:

*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AYAN KAI ROBERTS, KERMANISHA SANDERS



2017 APR 20   P 2: 44

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 o más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | CASE NUMBER: (Número del Caso) |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | MSC 11-02181 |

SUPERIOR COURT OF THE STATE OF CALIFORNIA - COUNTY OF CONTRA COSTA
725 Court Street
Martinez, CA 94553

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
Monique Doryland                                Tel : (510) 558-0855
Doryland Law Office                             Fax: (510) 465-0017
1814 Franklin Street, Suite 210, Oakland, CA 94612

| DATE *(Fecha)* | APR 20 2012 | Clerk, by *(Secretario)* | C. AGUILAR-JACALA | Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010))*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under:   ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUMMONS
ESSENTIAL FORMS

Monique Doryland  SBN 208371
Doryland Law Office
1814 Franklin Street, Suite 210
Oakland, California 94612
Telephone 510.558.0855
Facsimile  510.465-0017
Email: mdoryland@gmail.com

Attorney for Plaintiffs
AYAN KAI ROBERTS, KERMANISHA SANDERS

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF CONTRA COSTA
### UNLIMITED JURISDICTION

AYAN KAI ROBERTS, KERMANISHA
SANDERS,

    Plaintiffs,

vs.

DWAYNE BARTELS, BARTELS
PROPERTY MANAGEMENT. JACK
BURNS, SR., JACK BURNS, JR.,
SECURITY PACIFIC REAL ESTATE; IRA
G. ROSS, SR., FEDERAL HOME LOAN
MORTGAGE CORPORATION. and its
successors and assigns, and DOES 1 -XX.
inclusive.

    Defendants

Case No:  MSC 11-02181

FIRST AMENDED COMPLAINT FOR
DAMAGES AND DEMAND FOR JURY
TRIAL

1   Negligent Violation of Statute (Cal. Civil
    Code §789.3)
2.  Intentional Violation of Statute (Cal. Civil
    Code §789.3)
3.  Negligent Breach of the Implied Warranty
    of Habitability
4   Negligent Violation of Statute (Civil Code
    §1941 1, 1941.3, 1942.4, Health & Safety
    Code § 17920 3);
5   Violation of Statute (Cal. Public Utilities
    Code §777.1)
6   Wrongful Eviction
7.  Intentional Infliction of Emotional Distress
8.  Nuisance

FIRST AMENDED Complaint  MSC 11-02181
Ayan Kai Robens, et al  v  Dwayne Bartels  et al       1

## GENERAL ALLEGATIONS

1. On or about 2008 or 2009, Plaintiffs AYAN KAI ROBERTS and KERMANISHA SANDERS rented 556 Eighth Street, Upper Unit, located in the City of Richmond, Contra Costa County, California. ΔUϨΔ\

2. 556 Eighth Street, Richmond, California (hereinafter the "subject premises") was and is a residential dwelling building, and Plaintiffs were at all times relevant to this action legal and recognized residential tenants.

3. Plaintiffs' tenancy at the Premises commenced pursuant to an oral lease agreement with Defendant IRA G. ROSS, SR. ("Ross."). The material terms of said rental agreement were that Ross agreed to provide Plaintiffs with the exclusive right to possession and the quiet enjoyment of the Premises and to maintain the Premises in habitable condition. In return Plaintiffs agreed to pay Ross, and paid Ross, the agreed amount of rent. The agreement provided that all utilities were included in Plaintiffs' monthly rent. Plaintiffs performed all of their obligations under the rental agreement.

4. Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION, (hereinafter, "Freddie Mac") took over as the successor-in-interest from Ross on or about October 1, 2010 pursuant to a trustee's deed upon sale.

5. Under the City of Richmond Municipal Code Relating to Residential Eviction Control for Properties in Foreclosure (Richmond Municipal Code Chapter 7.105) and the Protecting Tenants at Foreclosure Act of 2009 (Public Law 111-22) Plaintiffs and Defendant Freddie Mac have a landlord-tenant contractual relationship; Defendant Freddie Mac is bound by the terms of Plaintiffs' rental agreement with Defendant's immediate predecessor in interest prior to foreclosure.

6. Freddie Mac in its role and status of owner of the subject premises and as landlord to the Plaintiffs caused to be hired or hired as its agents DWAYNE BARTELS and BARTELS PROPERTY MANAGEMENT, (hereinafter, "Bartels.")

7. Freddie Mac in its role and status of owner of the subject premises and as landlord to the Plaintiffs also caused to be hired or hired as its agents JACK BURNS, SR., JACK

FIRST AMENDED Complaint  MSC 11-02181
Ayan Kai Roberts, et al. v. Dwayne Bartels, et al     2

1    BURNS, JR., (hereinafter, "the Burns.")

2    8.  Freddie Mac in its role and status of owner of the subject premises and as landlord to the
3        Plaintiffs also caused to be hired or hired as its agents SECURITY PACIFIC REAL
4        ESTATE (hereinafter, "SPRE.")
5

6    9.  These agents of Freddie Mac communicated with the Plaintiffs or with Plaintiff AYAN
7        KAI ROBERTS and knew Plaintiffs were living there as residential tenants.

8    10. After Defendant Freddie Mac took over ownership of the Premises, the gas, power, and
9        electric utility services were terminated at the Premises, on or about October 2010.

10   11. Plaintiffs immediately informed the agents of Freddie Mac, that is, agents Bartels, Burns
11       and SPRE, to take corrective action and restore the electric utility service to the dwelling
12       unit.
13

14   12. Defendant Freddie Mac and the other Defendants, acting as its agents, failed to take any
15       remedial action. The premises were without any electrical service until on or about July
16       2011, despite the ongoing tenancy of the Plaintiffs.

17   13. In early 2011, Freddie Mac wrongfully sued the tenants in unlawful detainer, Contra Costa
18       County Superior Court Richmond Branch case number RS 11-0406, an action which was
19       later dismissed.

20   14. Plaintiffs remained in possession of the subject premises after the dismissal of this
21       unlawful detainer as the known residential tenants of Freddie Mac.
22

23   15. During this period of time, there were many serious breaches of the implied warranty of
24       habitability at the subject premises, including deteriorated stairs and broken windows.

25   16. Freddie Mac knew of these many serious issues affecting the tenantability of the subject
26       premises and Freddie Mac did not timely remediate the problems.

27   17. Certain repairs were made to the premises but not until on or about July of 2011, once
28       Freddie Mac was in the process of seeking to sell the building.
29

30   18. Plaintiff AYAN KAI ROBERTS (hereinafter, "Roberts") is an individual over the age of
31       18, and at all times mentioned herein was and is a resident of the County of Contra Costa

32   19. Plaintiff KERMANISHA SANDERS (hereinafter "Sanders") is an individual over the age

FIRST AMENDED Complaint for Damages
Ayan Kai Roberts, et al. v. Federal Home, et al.

of 18, and at all times mentioned herein was and is a resident of the County of Contra
Costa.

20. Plaintiffs are affianced, and Sanders was pregnant and was enduring a high-risk pregnancy
during many months of 2011.

21. Sanders was forced to re-locate in part or completely to San Francisco during her high-risk
pregnancy because there was no electrical service, power or gas at the premises until on or
about July 2011, and because of the serious tenantability issues at the subject premises.

22. Plaintiffs are informed and believe Defendant Federal Home Loan Mortgage Corporation,
hereinafter referred to as "Freddie Mac," is a federally chartered corporation with its
principal place of business in McLean, Virginia. At all times material to this action,
Defendant Freddie Mac operated in the State of California and conducted extensive
business in the State of California, and operated in Richmond, Contra Costa County. Since
on or about September 2008, Freddie Mac has been in conservatorship under the Federal
Housing Finance Agency, which is located in Washington, D. C.

23. Throughout Plaintiffs' tenancy at the Premises since Defendant Freddie Mac became the
owner, the Premises continuously and substantially lacked many of the affirmative
characteristics enumerated in Civil Code §1941.1, which describes untenantable
dwellings. Such defective conditions include, but are not limited to the following: lack of
effective waterproofing and weather protection; lack of gas facilities in good working
order; lack of plumbing facilities in good working order; lack of a water supply approved
under applicable law; lack of functioning water fixtures; lack of heating facilities that
conform with applicable law and are maintained in good working order; lack of electrical
lighting, with wiring and electrical equipment that conform with applicable law and are
maintained in good working order; failure to provide building, grounds and appurtenances
and areas under control of the landlord in clean, sanitary conditions free from
accumulation of debris, filth, rubbish, garbage, rodents and vermin, including termites,
and lack of floors, stairways and railings maintained in good repair.

24. Throughout Plaintiffs' tenancy at the Premises since Defendant Freddie Mac became the

owner, the Premises continuously and substantially lacked many of the affirmative characteristics enumerated in Civil Code §1941.3, including but are not limited to failing to provide and maintain functioning doors and windows with legally-required locking mechanisms; and operable window and door security or locking devices for doors and windows that are designed to be opened.

25. Throughout Plaintiffs' tenancy at the Premises since Defendant Freddie Mac became the owner, the Premises continuously and substantially suffered many of the conditions enumerated in Health and Safety Code §17920.3, which describes substandard buildings. Such defective conditions include but are not limited to the following: lack of, or improper water closet, lavatory, bathtub or shower; improper kitchen sink; lack of adequate heating; lack of, or improper operation of required ventilating equipment; lack of minimum amounts of natural light and ventilation; lack of required electrical lighting; dampness of habitable rooms; infestation of insects, vermin, or rodents; general dilapidation or improper maintenance; structural hazards; nuisance; wiring, which is not conformed with all applicable laws in effect at the time of installation and not currently in good and safe condition or working properly; defective plumbing not maintained in good and safe condition or working properly, and that is free of cross connections and siphonage between fixtures; defective mechanical equipment, including vents, that is not maintained in good and safe condition and is not in good and safe condition or working properly; and faulty weather protection, including deteriorated, crumbling, or loose plaster, deteriorated or ineffective waterproofing of exterior walls, roof, foundations, or floors, including broken windows or doors, and defective or lack of weather protection for exterior wall coverings, including lack of paint, or weathering due to lack of paint or other approved protective covering.

26. Throughout Plaintiffs' tenancy at the Premises since Defendant Freddie Mac became the owner, the Premises continuously and substantially suffered conditions including but not limited to the following: holes in interior walls; broken glass; missing and/or broken electrical outlet covers; collapsing front stairs; torn, damaged and deteriorated carpeting; a

FIRST AMENDED Complaint  MSC 11-02181
Ayan Kai Roberts et al. v. Dwayne Bartels, et al.

missing rear door; broken door and window locks; inoperable windows; exterior overgrowth, trash and debris; mold infestation; pest infestation including termites; and lack of any smoke detectors.

27. Defendant Freddie Mac, through its attorneys, sought to install smoke detectors at the unit on or about September 18, 2011

28. Defendant Freddie Mac had actual and/or constructive notice of each of the defective conditions mentioned herein. Defendant failed to take corrective action in a timely manner.

29. Plaintiffs remained tenants in good standing of Freddie Mac for all purposes and at all times relevant to this Complaint and the allegations herein.

30. The defective conditions were not caused by the wrongful or abnormal use of the Premises by Plaintiffs or anyone acting under Plaintiffs' authority.

31. Plaintiffs have suffered, and Defendants have caused, and proximately caused, loss of use of property, physical damage, general damage, and emotional distress in amounts to be demonstrated by proof.

32. On or about April 5, 2012, Plaintiffs surrendered possession of the subject premises to the successor-in-interest to Freddie Mac.

33. In committing the acts complained of herein, Defendants acted willfully and are guilty of malice, oppression and bad faith, intending by its acts to cause Plaintiffs emotional distress and harm by retaliating against Plaintiffs for peaceably exercising their legal rights including requesting repairs and a safe place to live, among other reasons. Plaintiffs are entitled to recover punitive damages according to law and statute in amounts to be demonstrated by proof at the time of trial.

34. In addition, or in the alternative, Defendants acted in a negligent manner without sufficient and reasonable care and they did not exercise the normal and reasonable supervision and attention to the needs of the Plaintiffs, in violation of the implied warranty of habitability and in violation of the statutory provisions and administrative regulations of the laws of the State of California and the City of Richmond, Contra Costa County, California.

FIRST AMENDED Complaint   MSC 11-02181
Ayan Kai Roberts, et al v. Dwayne Bartels et al          6

# FIRST CAUSE OF ACTION

## (Negligent Violation of Statute (Cal. Civil Code §789.3))

35. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

36. Plaintiffs had an oral lease agreement for exclusive use and possession of the Premises as described above.

37. Implied in every rental agreement is a warranty that the owner shall maintain the premises in a habitable condition. This obligation is set forth in, but not limited to, California Civil Code §1941.1, which requires that dwellings meet certain standards to be considered habitable. Civil Code §1941.3, and Health and Safety Code §17920.3 which describes substandard conditions endangering the health, property, safety or welfare of inhabitants.

38. Defendants had actual and constructive notice that the conditions alleged above existed and failed to take remedial action.

39. Defendants breached the implied warranty of habitability and its duty to provide and maintain habitable premises by allowing the conditions alleged herein to exist and persist at the Premises despite having notice of the conditions.

40. As a direct and proximate result of Defendant's acts and failures to act alleged herein, Plaintiffs have suffered discomfort, inconvenience, annoyance, physical harm, property damage and loss, and emotional distress, all to their general detriment in an amount to be proven at trial.

41. As a direct and proximate result of Defendant's acts and failures to act alleged herein, Plaintiffs have suffered general and special damages in an amount to be proven at trial.

42. Plaintiffs are informed and believe and thereon allege that the actions of Defendants as alleged herein was done with oppression, fraud and malice as defined in Civil Code §3294. Specifically, Plaintiffs repeatedly begged Defendants for repairs and for the power, gas and electricity utility service to be restored to their unit because their health and safety were endangered due to the conditions as alleged herein, especially as after a

certain period of time. it became known to the Plaintiffs that Sanders was pregnant. Defendants maliciously ignored Plaintiffs' requests and refused to take remedial action. Plaintiffs are informed and believe Defendants failed to act with the malicious intention to force Plaintiffs to involuntarily vacate their home. As such, Plaintiffs should recover, in addition to actual damages. damages to make an example of and to punish Defendants.

## SECOND CAUSE OF ACTION

### (Intentional Violation of Statute California Civil Code 789.3)

43. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

44. Under Plaintiffs' lease agreement with Defendant's immediate predecessor in interest, the landlord was responsible for providing and paying for the gas, power, and electricity utility. Shortly after Defendant took ownership of the Premises, the gas, power and electricity were terminated. Plaintiffs immediately gave Defendant notice of the termination and requested remedial action. Defendant refused to take any remedial action in order to force Plaintiffs to involuntarily vacate his residence. Defendant failed to take any action to restore utility services for Plaintiffs' residential rental unit despite having notice of the termination, and despite having notice the utility service provider refused to restore service unless Defendant took action as the owner of the Premises. Plaintiffs remain without power, gas and electricity services at the time of filing of this complaint

45. Defendant, by its acts and/or omissions, willfully caused the interruption and termination of all gas, power and electricity utility services, including termination of heat, light and refrigeration. at Plaintiffs'' residence with the intent of terminating Plaintiffs'' occupancy.

46. As a direct and proximate result of Defendant's acts and failures to act alleged herein, Plaintiffs have suffered general and special damages in an amount to be proven at trial

47. As a direct and proximate result of Defendant's acts and failures to act alleged herein, Plaintiffs have suffered stress. humiliation. discomfort. inconvenience, annoyance,

FIRST AMENDED Complaint   MSC 11-02181
Ayan Kai Roberts. et al  v  Dwayne Bartels, et al    8

physical harm, property damage and loss, and emotional distress, all to his general detriment in an amount to be proven at trial.

48. Under Civil Code §789.3. Plaintiffs are entitled to, and they hereby pray for, his actual damages and statutory damages not to exceed one hundred dollars ($100.00) for each day or part thereof Defendant remained in violation of Civil Code §789.3 and attorney's fees.

49. Plaintiffs are informed and believes and thereon alleges that the actions of Defendants as alleged herein was done with oppression, fraud and malice as defined in Civil Code §3294. Specifically, Plaintiffs repeatedly begged Defendant to take action to restore utility services to their apartment because their health and safety were seriously endangered. Defendant maliciously ignored Plaintiffs' requests and refused to take remedial action. Plaintiffs are informed and believe that the Defendants failed to act with the malicious intention to force Plaintiffs to involuntarily vacate their home. As such, Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendant.

## THIRD CAUSE OF ACTION

### (Negligent Breach of Implied Warranty of Habitability)

50. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

### First Count: Breach of the Implied Warranty of Habitability

51. Plaintiffs entered into an oral rental agreement for exclusive use and possession of the Premises, as described above. Plaintiffs fully complied with their duties under the rental agreement. Defendant, as successor in interest under a deed of trust following foreclosure, is bound to the terms of that rental agreement.

52. Implied in every rental agreement is a warranty that the landlord shall maintain the premises in a habitable condition. This obligation is set forth in, but not limited to, California Civil Code §1941.1, which requires that dwellings meet certain standards to be considered habitable. Civil Code §1941.3, and Health and Safety Code §17920.3 which describes substandard conditions endangering the health, property, safety or

1    welfare of inhabitants.

2    53. Defendants breached this implied warranty of habitability by allowing the conditions
3        alleged herein to exist and persist at the Premises.

4    54. Defendants had actual and constructive notice that the conditions alleged above existed
5        and failed to take any remedial action.
6

7    55. As a direct, proximate, and foreseeable result of Defendants' breach as set forth herein,
8        Plaintiffs lost use of the Premises and suffered property damage and loss and other
9        damages. These injuries have caused, and will continue to cause Plaintiffs certain
10       damages according to proof.

11   **Second Count: Breach of Covenant of Good Faith and Fair Dealing**
12
13   56. Plaintiffs' rental agreement contained an implied covenant of good faith and fair dealing
14       by which Defendant was bound. In committing the acts complained of herein,
15       Defendants breached the covenant of good faith and fair dealing, thereby breaching the
16       rental contract.

17   57. Plaintiffs performed their obligations under the rental agreement. Defendants were
18       required to perform in good faith and fairly. By failing to keep the Premises habitable
19       and violating the herein-mentioned statutes, Defendants intentionally, and without legal
20       cause or excuse, materially breached the rental agreement.
21

22   58. Upon information and belief, the Defendants' intent in doing these things was to deprive
23       Plaintiffs of the beneficial use and enjoyment of the Premises and/or to secure their
24       involuntary surrender of the Premises.

25   59. As a direct and proximate result of the acts and/or omissions of Defendant, Plaintiffs
26       have suffered general and special damages in an amount according to proof.

27   **Third Count: Breach of Covenant of Quiet Use and Enjoyment**
28
29   60. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the
30       preceding paragraphs as though fully set forth herein.

31   61. Plaintiffs had a rental agreement for the Premises with Defendant ROSS and the
32       successor-in-interest to that agreement, Freddie Mac, thus had an agreement with the

FIRST AMENDED Complaint  MSC 11-02181
Ayan Kai Roberts, et al  v. Dwayne Bartels, et al     10

1   Plaintiffs. Plaintiffs performed their obligations under their rental agreement. The rental

2   agreement, like all rental agreements in the State of California, contained an implied

3   covenant of quiet enjoyment. That covenant requires that Defendant refrains, by act or

4   omission, from disturbing Plaintiffs' possession and beneficial enjoyment of the

5   Premises.

6

7   62. Defendant's failure to maintain habitable premises and termination of Plaintiffs' utility

8   services constitute breaches of the covenant of quiet enjoyment.

9   63. As a direct and proximate cause of the acts and/or omissions of Defendant, Plaintiffs

10  have suffered general and special damages in an amount according to proof.

11  ## FOURTH CAUSE OF ACTION

12  ### (Negligent Violation of Statutes)

13

14  **First Count: Negligence**

15  64. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the

16  preceding paragraphs as though fully set forth herein.

17  65. By reason of the landlord-tenant relationship between Plaintiffs and Defendants,

18  Defendants owed Plaintiffs the duty to exercise reasonable care in the ownership,

19  operation, management, renting, and control of the Premises, which includes all the

20  duties listed below.

21

22  66. Defendants, as operator of rental real property, owed Plaintiffs a duty of care, under Civil

23  Code §1708, to avoid foreseeable injury to Plaintiffs and to avoid infringing on

24  Plaintiffs'' rights.

25  67. The duty to exercise reasonable care owed by Defendants to Plaintiffs included, but is

26  not limited to, the duty to provide quiet enjoyment of the Premises during the term of the

27  lease, the duty to maintain the Premises in a safe, habitable and sanitary condition, the

28  duty to refrain from allowing termination of Plaintiffs' utilities, and the duty not to cause

29  injury to Plaintiffs.

30

31  68. Defendants, by their conducted alleged herein, breached their duty to Plaintiffs, including

32  but not limited to by failing to provide quiet enjoyment of the Premises, failing to

FIRST AMENDED Complaint   MSC 11-02181
Ayan Kai Roberts, et al  v  Dwayne Bartels, et al      11

1  maintain the Premises in a safe, habitable and sanitary condition, causing the termination
2  of Plaintiffs' gas, power and electricity and failing to take action to restore their gas,
3  power and electricity, and causing Plaintiffs injury.

4  69. As a direct and proximate result of Defendants' breaches the Plaintiffs have suffered
5     general and special damages as alleged herein including severe emotional distress. As a
6     direct and proximate result of Defendants' acts and failures to act alleged herein,
7     Plaintiffs have suffered stress, humiliation, discomfort, inconvenience, annoyance,
8     physical harm, property damage and loss, and emotional distress, all to their general
9     detriment in an amount to be proven at trial.
10

11 **Negligence Per Se**

12 70. California Evidence Code §669 provides that Defendants' failure to exercise due care is
13    presumed if it violated a statute; the violation proximately caused injury to a person; the
14    injury resulted from an occurrence of the nature which the statute was designed to
15    prevent; and the person suffering the injury was one of the class of persons for whose
16    protection the statute was adopted.
17

18 **Second Count: Violation of Civil Code §1941.1, Civil Code §1941.3 and Health & Safety**
19 **Code §17920.3**

20 71. The laws of the State of California, including, but not limited to California Civil Code
21    §1941.1, Health & Safety Code §17920.3 and Civil Code §1941.3 requires Defendant to
22    provide and maintain habitable Premises for Plaintiffs who is a tenant, which is the class
23    of persons the codes were adopted to protect.
24

25 72. Defendants therefore owed a duty of due care under the statutes and laws mentioned
26    above to provide and maintain habitable Premises for Plaintiffs. By its acts and
27    omissions Defendant materially breached the requirements of Civil Code §1941, Health
28    & Safety Code §17920.3 and Civil Code §1941.3, thereby breaching its duty to Plaintiffs
29    to maintain habitable premises, which occurrence the statutes are designed to prevent.
30

31 73. By their breaches, Defendants caused and proximately caused the damages and injuries
32    to Plaintiffs complained of herein, which are the type of injuries the statutes were meant

FIRST AMENDED Complaint   MSC 11-02181
Ayan Kai Roberts et al v. Dwayne Berg, et al

to prevent.

**Third Count: Violation of Civil Code §789.3 and Public Utilities Code §777.1**

74. Civil Code §789.3 prohibits a landlord from causing disruption to a tenant's utility services while the residential unit is occupied with the intent of terminating a tenant's occupancy.

75. Public Utilities Code §777.1 requires a landlord not to, by act or omission, direct, permit, and/or fail to prevent a termination of gas, power and electricity service at an occupied residential unit.

76. As set forth in detail above and incorporated by reference herein, Defendants violated Civil Code §789.3 and Public Utilities Code §777.1 resulting in termination of utility services to Plaintiffs'' residential rental unit, which is the nature of occurrence the statutes were designed to prevent, materially breaching its duty under both Civil Code §789.3 and Public Utilities Code §777.1. Plaintiffs were residential tenants of the Defendants when this occurred, which is the class of persons the statutes were adopted to protect.

77. By Defendants' actions, Plaintiffs suffered injuries including but not limited to endangerment of their health and safety, loss of use and enjoyment of their lawful residence, and loss of occupancy of habitable premises, the nature of which the statutes were designed to prevent.

78. As a direct, proximate and foreseeable result of Defendants' acts, Plaintiffs have suffered and continue to suffer damages as set forth herein and are entitled to relief in an amount to be determined according to proof.

**Fourth Count: Negligent Infliction of Emotional Distress**

79. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

80. By reason of the landlord-tenant relationship between Plaintiffs and Defendants, Defendants owed Plaintiffs the duty to exercise reasonable care in the ownership, operation, management, renting, and control of the Premises.

81. Defendants knew or should have known that it would cause severe emotional distress to Plaintiffs when Defendants failed to make timely and necessary repairs to the Premises as required under the implied warranty of habitability, intentionally interfered with Plaintiffs' quiet use and enjoyment of the Premises, and intentionally caused, and/or directed, permitted and/or failed to prevent termination of gas, power and electricity services to the Premises. Plaintiffs notified Defendant in October 2010 that the utility termination was causing Plaintiffs severe emotional distress, yet Defendants failed to take any remedial action until the summer of 2011.

82. Defendants, by their conduct alleged herein, negligently, carelessly, and wrongfully caused and proximately caused Plaintiffs severe emotional distress.

83. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have suffered extreme mental distress and other damages to their general detriment in an amount according to proof.

### FIFTH CAUSE OF ACTION

#### (Violation of Statute California Pub. Utilities Code §777.1)

84. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

85. Defendants' acts, and failures to act, as alleged herein constitute extreme and outrageous conduct beyond all bounds of decency.

86. The conduct of the Defendants was knowing, intentional, and willful. Defendants had full knowledge or substantial certainty of the extreme mental distress that its conduct would cause Plaintiffs. Defendants acted with intentional disregard for the reasonably foreseeable consequences of its actions.

87. Defendants acted with the intention of causing, and/or reckless disregard for the probability of causing, emotional distress to Plaintiffs when it failed to make timely and necessary repairs to the Premises as required under the implied warranty of habitability, intentionally interfered with Plaintiffs' quiet use and enjoyment of the Premises, and intentionally caused, and/or directed, permitted and/or failed to prevent termination of

FIRST AMENDED Complaint   MSC 11-02181
Ayan Kai Roberts, et al  v  Dwayne Bartels, et al     14

gas, power and electricity services to the Premises. Plaintiffs notified Defendant in October 2010 that the utility termination was causing Plaintiffs severe emotional distress, yet Defendants did nothing, intending to cause and/or with the reckless disregard for the probability of causing Plaintiffs severe emotional distress.

88. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have suffered extreme mental distress to his general detriment in an amount according to proof. Plaintiffs have suffered worry and anxiety over the acts described above including but not limited to living in uninhabitable premises, and fear for their safety and loss of their home.

89. Plaintiffs are informed and believes and thereon alleges that the actions of Defendant as described above were done with oppression, fraud and malice as defined in Civil Code §3294. As such, Plaintiffs should recover, in addition to actual damages, damages to make an example of and to punish Defendant.

## SIXTH CAUSE OF ACTION
### (Wrongful Eviction)

90. Plaintiffs re-allege and incorporate in this cause of action, each and every allegation contained above as if fully set forth herein.

91. A landlord who directly or indirectly willfully causes the termination of utility services on a residential rental unit with the intent of terminating the tenant's occupancy is guilty of a prohibited self-help eviction under California law.

92. Defendant's severe breaches of the warranty of habitability and the termination of gas, power and electric services at the Premises constructively evicted Plaintiffs from his home.

93. Defendant's wrongful actions, as set forth herein, constitute a wrongful eviction in violation of California common law and constitute an unlawful eviction in violation of the City of Richmond Municipal Code Relating to Residential Eviction Control for Properties in Foreclosure (Richmond Municipal Code Chapter 7.105 et seq.)

94. As a direct, proximate, and foreseeable result of Defendant's conduct as set forth above, Plaintiffs lost, and continues to lose, use of the Premises, and was hurt in his health, strength, and activity, sustaining injuries to his body, shock to their nervous system, and harm to his psyche; including damages sustained for emotional and psychological distress. All these injuries have caused and continue to cause Plaintiffs physical, nervous and psychological pain, suffering and anguish. These injuries have caused, and will continue to cause Plaintiffs general damages in an amount to be proven at trial.

95. The aforementioned actions of the Defendants were willful, wanton, fraudulent, malicious and oppressive and justify the awarding of punitive damages in an amount sufficient to set an example.

## SEVENTH CAUSE OF ACTION

### (Intentional Infliction Of Emotional Distress)

96. Plaintiffs re-allege and incorporate in this cause of action, each and every allegation contained above as if fully set forth herein.

97. Defendant Freddie Mac and its agents knowingly deprived Plaintiffs of utility service and power, and otherwise abridged their rights as tenants.

98. Defendant Freddie Mac and its agents failed to restore utility service or power to the dwelling unit of the Plaintiffs in a timely manner.

99. Defendant Freddie Mac and its agents failed to make needed and requested repairs to the unit in a timely manner.

100. This conduct of the Defendants was extreme and outrageous, and Defendants acted or caused others to act, or failed to act, with the intention of causing severe and extreme emotional distress to the Plaintiffs.

101. The conduct of Freddie Mac and the other Defendants, its agents, was extreme and outrageous and Defendants acted or caused others to act, or failed to act, in reckless disregard of the probability of causing the Plaintiffs severe and extreme emotional distress.

102. The Defendants forced the Plaintiffs to endure and suffer severe and extreme emotional distress, humiliation, anxiety, discomfort, inconvenience, annoyance, physical harm, property damage and loss. The actual and proximate cause of the emotional distress suffered by the Plaintiffs was the Defendants' outrageous conduct, and this conduct was atrocious and beyond the bounds of common decency.

### EIGHTH CAUSE OF ACTION

(Nuisance)

103. Plaintiffs re-allege and incorporate in this cause of action, each and every allegation contained above as if fully set forth herein.

104. The acts complained of above constitute a nuisance within the meaning of California Civil Code §3479. Freddie Mac and the Defendants had a legal duty to Plaintiffs to use due care to prevent and abate said nuisance. By committing the acts and omissions complained of above, Defendants have breached that duty. Defendants' breach of their legal duty caused, and proximately caused, the damages to Plaintiffs complained of above.

### PRAYER

WHEREFORE Plaintiffs pray for judgment as follows,

A. For general, compensatory and special damages according to proof;

B. For attorneys fees pursuant to Civil Code §789.3, Cal Public Utilities Code Code §777.1, as well as reasonable attorney fees according to law;

C. For civil penalties according to law;

D. For punitive damages according to proof for each Defendant; and

E. For such other and further relief which this Court deems just and proper.

Respectfully Submitted,

DATED: April 20, 2012

MOSHQUE DORYLAND
Attorney for Plaintiffs

From:                                    10/24/2012 17:11    #155 P.003/004

1   PETER J. SALMON (SBN 174386)
    CUONG M. NGUYEN (SBN 248586)
2   ERIC TSAI (SBN 273056)
    PITE DUNCAN, LLP
3   4375 JUTLAND DRIVE, SUITE 200
    P.O. BOX 17935
4   SAN DIEGO, CA 92177-0935
    TELEPHONE: (858) 750-7600
5   FACSIMILE: (619) 590-1385
    E-MAIL: etsai@piteduncan.com

6   Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION

7

**F I L E D**

OCT 22 2012

8                   **SUPERIOR COURT OF CALIFORNIA**

9                   **COUNTY OF CONTRA COSTA**

10  AYAN KAI ROBERTS, KERMANISHA      Case No. MSC 11-02181
    SANDERS,
11                                    **NOTICE OF DEMURRER AND**
              Plaintiffs,             **DEFENDANT FEDERAL HOME LOAN**
12                                    **MORTGAGE CORPORATION'S**
         v.                           **DEMURRER TO FIRST AMENDED**
13                                    **COMPLAINT; MEMORANDUM OF**
    DWAYNE BARTELS, BARTELS           **POINTS AND AUTHORITIES IN**
14  PROPERTY MANAGEMENT, JACK         **SUPPORT THEREOF**
    BURNS, SR., JACK BURNS, JR.,
15  SECURITY PACIFIC REAL ESTATE; IRA *[Request for Judicial Notice filed*
    G. ROSS, SR., FEDERAL HOME LOAN   *concurrently herewith]*
16  MORTGAGE CORPORATION, and its
    successors and assigns, and DOES 1-XX,  Hearing:
17  inclusive,                        Date:  12-5-12
                                      Time:  9:00
18            Defendants.             Dept.: 3
                                      Judge:
19
                                      First Amended Complaint Filed:
20                                             April 20, 2012
                                      Trial Date:   Not Yet Set
21                                                              **FAX FILING**

22          **TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF**

23  **RECORD:**

24          PLEASE TAKE NOTICE that on the above-referenced time, date and Department of the

25  above-entitled court, located at 725 Court Street, Martinez, California 94553, Defendant FEDERAL

26  HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") will and hereby demur to

27  Plaintiffs' First Amended Complaint on the following grounds:

28  ///

-1-
NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT

1                     **DEMURRER TO THE ENTIRE COMPLAINT**

2       1.     Freddie Mac demurs generally and specifically to Plaintiffs' entire First Amended

3 Complaint on the grounds that the pleading fails to state facts sufficient to constitute a cause of

4 action against Freddie Mac. Code Civ. P. § 430.10(e).

5                  **DEMURRER TO THE FIRST CAUSE OF ACTION**

6       2.     Plaintiffs' first cause of action for negligent violation of statute (Cal. Civil Code §

7 789.3) fails to state facts sufficient to constitute a cause of action against Freddie Mac. Code Civ.

8 P. § 430.10(e).

9             **DEMURRER TO THE SECOND CAUSE OF ACTION**

10       3.     Plaintiffs' second cause of action for intentional violation of statute (Cal. Civil Code

11 § 789.3) fails to state facts sufficient to constitute a cause of action against Freddie Mac. Code Civ.

12 P. § 430.10(e).

13             **DEMURRER TO THE THIRD CAUSE OF ACTION**

14       4.     Plaintiffs' third cause of action for negligent breach of the implied warranty of

15 habitability fails to state facts sufficient to constitute a cause of action against Freddie Mac. Code

16 Civ. P. § 430.10(e).

17             **DEMURRER TO THE FOURTH CAUSE OF ACTION**

18       5.     Plaintiffs' fourth cause of action for negligent violation of statute (Civil Code §

19 1941.1, 1941.3, 1942.4, Health & Safety Code § 17920.3) fails to state facts sufficient to constitute

20 a cause of action against Freddie Mac. Code Civ. P. § 430.10(e).

21             **DEMURRER TO THE FIFTH CAUSE OF ACTION**

22       6.     Plaintiffs' fifth cause of action for violation of statute (Cal. Public Utilities Code §

23 777.1) fails to state facts sufficient to constitute a cause of action against Freddie Mac. Code Civ.

24 P. § 430.10(e).

25             **DEMURRER TO THE SIXTH CAUSE OF ACTION**

26       7.     Plaintiffs' sixth cause of action for wrongful eviction fails to state facts sufficient to

27 constitute a cause of action against Freddie Mac. Code Civ. P. § 430.10(e).

28   ///

1    **DEMURRER TO THE SEVENTH CAUSE OF ACTION**

2    8.    Plaintiffs' seventh cause of action for intentional infliction of emotional distress fails

3    to state facts sufficient to constitute a cause of action against Freddie Mac. Code Civ. P. § 430.10(e).

4    **DEMURRER TO THE EIGHTH CAUSE OF ACTION**

5    9.    Plaintiffs' eighth cause of action for nuisance fails to state facts sufficient to constitute

6    a cause of action against Freddie Mac. Code Civ. P. § 430.10(e).

7                                        PITE DUNCAN, LLP

8

9    Dated: October 22, 2012
                                        ERIC TSAI
10                                       Attorneys for Defendant
                                        FEDERAL    HOME    LOAN    MORTGAGE
11                                       CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3     Plaintiffs, allegedly former tenants of the prior owner of the subject property without a
4  perfected interest in the property, sued Freddie Mac after Freddie Mac obtained title to the property
5  through foreclosure. Plaintiffs sue under an oral lease with the former owner and attempt to impose
6  obligations thereunder upon Freddie Mac, a complete stranger to the purported verbal lease. Based
7  thereon, Plaintiffs allege that Freddie Mac failed to provide utility services and maintain the premises
8  in habitable condition. However, under real property law, the foreclosure extinguished any interest
9  in the property Plaintiffs may have had. Plaintiffs simply do not have any lease agreement with
10  Freddie Mac. In fact, Freddie Mac served notices to vacate the premises and Plaintiffs admittedly
11  have not made any rent payments to Freddie Mac. Simply, the purported obligations are not owed
12  to Plaintiffs. Accordingly, the demurrer to the First Amended Complaint ("FAC") should be
13  sustained without leave to amend.

14

## II. STATEMENT OF FACTS

15 **A.     Co-defendant Ira G. Ross Sr. obtained the subject loan secured by the subject property**

16     On or around April 25, 2003, co-defendant Ira G. Ross Sr. ("Ross") obtained the subject
17  $208,000 loan from Flagstar Bank, FSB secured by the Deed of Trust against the real property
18  located at 556 8th Street, Richmond, California 94801 (the "Property"). (Request for Judicial Notice
19  ['RJN'] Exh. A.)

20 **B.     Ross failed to make loan payments and the Property was foreclosed**

21     Ross defaulted on the subject loan and as a result, non-judicial foreclosure was commenced.
22  On September 23, 2010, a trustee's sale was conducted whereby Freddie Mac acquired title to the
23  Property. (RJN Exh. B.)

24 **C.     Freddie Mac commenced eviction proceedings but dismissed the action; subsequently,**
        **the Property was sold to a third party buyer**
25

26     On February 18, 2011, Freddie Mac filed an unlawful detainer action but voluntarily
27  dismissed the action against Plaintiff on July 18, 2011. (RJN Exhs. C-D.) On February 9, 2012,
28  Freddie Mac sold the Property to a third party. (RJN Exh. E.)

-4-
**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1                                           **III. LEGAL STANDARD**

2        California Code of Civil Procedure § 430.10(e) allows a party to demur to a complaint or any

3 cause of action therein, on the grounds that the pleading fails to allege sufficient facts to state a cause

4 of action against the defendant. The trial court may consider all material facts plead in the complaint

5 and those arising by reasonable implication therefrom, but it may not consider contentions,

6 deductions or conclusions of fact and law. <u>Young v. Gannon</u> (2002) 118 Cal.Rptr.2d 187.

7        In ruling on a demurrer, the court looks to the face of the complaint, the exhibits attached to

8 the complaint, and upon matters of which the Court may take judicial notice. *See* <u>Franz v. Blackwell</u>

9 (1987) 189 Cal.App.3d 91, 94. The Court need not accept as true factual allegations contradicted

10 by matters of public record, or other judicially noticeable facts. *See* CCP § 430.30(a); <u>Joslin v.</u>

11 <u>H.A.S. Ins. Brokerage</u> (1986) 184 Cal.App.3d 369, 374-75. The Court, in ruling on whether a legal

12 cause is stated, may look to facts that are judicially noticeable, such as records of this Court,

13 pertinent to the allegations in the complaint. Allegations contradicted by matters of public records

14 or other judicially noticeable facts are not accepted as true. <u>Id</u>.

15        "If the plaintiff has not had an opportunity to amend the complaint in response to the

16 demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on

17 its fact that it is incapable of amendment." <u>Align Tech, Inc. v. Tran</u> (2009) 179 Cal.App.4th 949,

18 974 (citation omitted). Leave to amend is properly denied when the facts are not in dispute, the

19 nature of the claim is clear but there is no liability under substantive law. <u>Johnson v. County of Los</u>

20 <u>Angeles</u> (1983) 143 Cal.App.3d 298, 306. It is not up to the judge to figure out how the complaint

21 can be amended to state a cause of action. The burden is on the plaintiff to show in what manner he

22 or she can amend the complaint, and how that amendment will change the legal effect of the

23 pleading. <u>Goodman v. Kennedy</u> (1976) 18 Cal.3d 335, 349.

24                                           **IV. ARGUMENT**

25 **A.**    **Plaintiffs' claims fail because they have not and cannot allege a lease agreement with**
        **Freddie Mac**

26

27        Plaintiffs allege that they entered into an oral lease with the prior owner, Ross, and the rental

28 agreement provides that Ross agreed to maintain the premises and pay all utilities in exchange for

1  Plaintiffs' unspecified monthly rent payments. (FAC ¶¶ 1, 3.)  However, Plaintiffs do not allege a
2  lease with Freddie Mac or payment of any rent.  Plaintiffs merely contend that the PTFA and
3  Richmond Code of Ordinances somehow created a lease agreement with Freddie Mac. (FAC ¶¶ 4-
4  5.)  Plaintiffs' theory is not supported by the law.

5           **1.      Plaintiffs' alleged oral lease with Ross was extinguished by the foreclosure**

6           "Title conveyed by a trustee's deed relates back to the date when the deed of trust was
7  executed." Dover Mobile Estates v. Fiber Form Products, Inc. (1990) 220 Cal.App.3d 1494, 1498
8  (citation omitted).  "The trustee's deed therefore passes the title held by the trustor at the time of
9  execution." Id. (citation omitted).  "Liens which attach after execution of the foreclosed trustee
10 deeds are extinguished.  The purchaser at the trustee sale therefore takes title free of those junior or
11 subordinate liens." Id. (citations omitted).  "A lease is generally deemed to be subordinate to a deed
12 of trust if the lease is created after the deed of trust was recorded." Id. (citations omitted).  Thus, "[a]
13 lease which is subordinate to the deed of trust is extinguished by the foreclosure." Id. (citations
14 omitted).

15         Here, the alleged oral lease was created years after the Deed of Trust was recorded on May
16 1, 2003.  (RJN Exh. A.)  Plaintiffs allegedly entered into the oral lease, with unspecified term, in
17 2008 or 2009.  (FAC ¶ 1.)  If the lease had not already terminated by the time of the foreclosure sale,
18 the alleged oral lease was extinguished by the foreclosure and Freddie Mac acquired title to the
19 Property free of any interest which Plaintiffs may have had in the Property.

20         **2.      The Protecting Tenants at Foreclosure Act is a defense to eviction and no
                 eviction occurred, and in any event, Plaintiffs do not have a private right of
21               action under the PTFA**

22         Plaintiffs contend the PTFA created a land-tenant relationship by operation of law.  (FAC
23 ¶ 5.)

24         The PTFA requires the successor in interest in a foreclosed property to honor the remaining
25 term of a bona fide lease entered into before the notice of foreclosure. *See* The Helping Families
26 Save Their Homes Act of 2009, Pub. L. No. 111-22, § 702, 123 Stat. 1632 (2009); Nativi v.
27 Deutsche Bank Nat. Trust Co. (N.D.Cal.2010) 2010 WL 2179885, at *2.  "The PTFA was intended
28 to allow tenants who are victims of the foreclosing crisis a protection that can be used in the state

-6-

1 courts to combat unlawful evictions." Nativi at *3.

2      Moreover, "Congress intended the PTFA to be used for protection in state court [and thus],
3 a private right of action is not found to exist under the PTFA." Id. at *4; *see also* Fannie Mae v.
4 Lemere (E.D.Cal.2010) 2010 WL 2696697, at *2; Deutsche Bank Nat'l Trust Co. v. Jora
5 (E.D.Cal.2010) 2010 WL 3943584, at *1 n.3; Zalemba v. HSBC Bank, USA (S.D.Cal.2010) 2010
6 WL 3894577, at *2; Logan v. U.S. Bank Nat. Ass'n (C.D.Cal.2010) 2010 WL 1444878, at *7. Thus,
7 Plaintiffs' reliance on the PTFA to establish a tenancy is misplaced. In any event, Freddie Mac did
8 not evict Plaintiffs. Freddie Mac sold the Property to a third party in February 2012, and Plaintiffs
9 admit they voluntarily surrendered possession in April 2012.

10      **3.   Similarly, the Richmond Eviction Control Ordinance is also merely a defense
to eviction and does not create a landlord-tenant relationship**
11

12      Plaintiffs contend the Richard Municipal Code Chapter 7.105 created a lease agreement with
13 Freddie Mac. (FAC ¶ 5.) Plaintiffs are wrong once again.

14      Chapter 7.105 of the Richmond Code of Ordinances is an eviction control provision that
15 regulates grounds for eviction when a rental unit is foreclosed. (the "Ordinance"). *See* Richmond
16 Code of Ordinances, Article VII Businesses, Chapter 7.105, Eviction Control on Residential Property
17 in Foreclosure (Ord. No. 34-09 N.S., § 2, 10-20-2009.) The Ordinance further establishes various
18 requirements before a landlord by way of foreclosure may evict an existing tenant, *e.g.*, payment
19 relocation fees, notice requirements, and prohibition of retaliatory eviction. (Id.) Such municipal
20 laws merely limit the grounds for eviction and nothing more. *See* Rental Housing Ass'n of Northern
21 Alameda County v. City of Oakland (2009) 171 Cal.App.4th 741, 754 ("municipalities may by
22 ordinance limit the substantive grounds for eviction by specifying that a landlord may gain
23 possession of a rental unit only on certain limited grounds. But they may not procedurally impair
24 the summary eviction scheme set forth in the unlawful detainer statutes and they may not alter the
25 Evidence Code burdens of proof.") Thus, a violation of an eviction control ordinance may be the
26 basis for a defense in an eviction proceeding by the landlord to recover possession for nonpayment
27 of rent. People v. Little (1983) 143 Cal.App.3d Supp. 14, 18. However, it does not create a
28 landlord-tenant relationship between a foreclosure purchaser and the occupant of the property. Id.

-7-

1   at 19.

2       In <u>Little</u>, a foreclosure purchaser evicted an existing occupant through unlawful detainer

3   proceedings and subsequently made a new lease agreement with the same occupant with a rental

4   increase higher than that permitted under a city rent control ordinance. <u>Id</u>. at 16. Although no

5   landlord-tenant relationship existed between the purchaser and occupant as a result of the

6   foreclosure, the lack of such relationship does not provide a defense to the alleged violation of the

7   ordinance. <u>Id</u>. at 19. As the court in <u>Little</u> explained:

8       The Ordinance by its terms does not attempt to regulate all relationships between
        landlords and tenants, nor between owners and occupants of real property. What the
9       Ordinance does do, by its express language, is to regulate "rents" ... The Ordinance
        is a comprehensive enactment regulating the maximum rent which can be charged
10      for controlled "rental units" ... [The purchaser] acquired the unit at foreclosure
        subject to the valid police power limitation on the maximum rent he could charge for
11      his use.

12  <u>Little</u>, *supra* at 19-20. Accordingly, the court held that the purchaser was entitled to evict the

13  occupant under California law but was liable for any violation of the rent control ordinance. <u>Id</u>.

14      Here, the Ordinance merely limits the grounds for eviction. However, as Plaintiffs concede,

15  Freddie Mac did not evict them from the Property. Plaintiffs have not alleged any provision in the

16  Ordinance which would contravene contract law and impose a contractual lease relationship with

17  Freddie Mac. Nor does such a provision exist. As <u>Little</u> explained, Freddie Mac may be a

18  "landlord" for purposes of enforcing the Ordinance, but it does not create a landlord-tenant

19  relationship. Accordingly, Plaintiffs reliance on the Ordinance is misplaced.

20      **4.   Plaintiffs have not alleged that they entered into a new lease agreement with
            Freddie Mac and as a result, there is no landlord-tenant relationship under**
21          **California law**

22      The Supreme Court of California has explained:

23      There is no privity of contract or of estate between the purchaser upon the
        [foreclosure] sale and the tenant. The purchaser may, therefore, treat the tenant as
24      an occupant without right, and maintain ejectment for the premises ... The relation
        between the purchaser and tenant is that of owner and trespasser, until some
25      agreement, express or implied, is made between them with reference to the
        occupation. Until then, both are equally free from any contract obligations to each
26      other.

27  <u>McDermott v. Burke</u> (1860) 16 Cal. 580, 589. Thus, Plaintiffs' contention that there was a landlord-

28  tenant relationship with Freddie Mac has no basis under California law. Plaintiffs' alleged

                                          -8-

1   performance under the oral lease agreement with Ross has nothing to do with Freddie Mac, who was
2   not a party to that alleged agreement. Plaintiffs have not alleged that they entered into any lease with
3   Freddie Mac or made any rental payments to Freddie Mac. Freddie Mac clearly did not consent to
4   Plaintiffs' possession. (RJN Exhs. D.) Plaintiffs are in naked possession with no viable interest in
5   the Property. Clearly, Plaintiffs' refusal to initially relinquish possession of the Property does not
6   create any obligations as to Freddie Mac as Plaintiffs insist.

7   **B.**   **Plaintiffs are not entitled to any damages because the implied warranty of habitability**
      **only provides an offset of rents paid and Plaintiffs admit they made no rent payments**
8

9   Plaintiffs' claims are based on Freddie Mac's alleged failure to provide utility services and
10   maintain the premises in habitable condition, i.e., Plaintiffs allege Freddie Mac breached the implied
11   warranty of habitability. (*See* FAC generally.)

12   Notwithstanding a breach of the implied warranty of habitability, aggrieved tenants must still
13   pay reasonable rent for the period of the breach. Code Civ. P. §§ 1174.2(a)(1), (2) & (4). The
14   amount of "reasonable rent" is determined by the Court and depends upon the damages caused by
15   the breach. Code Civ. P. § 1174.2(a)(1); Green v. Superior Court (Sumski) (1974) 10 Cal.3d 616,
16   638-39. There are two methods to determine "rental value" damages. First, the court will ascertain
17   the difference between the fair rental value of the premises if it had been in the condition warranted
18   (generally, the contract rent) and the actual "as is" value (i.e., with the untenable condition) during
19   the tenant's occupancy. Green, *supra* at 638. Second, the court estimates the relative percentage
20   reduction of the use of the rented premises caused by the breach. Id. at 639 fn. 24. Under either
21   approach, aggrieved tenants may recover at most the full amount of the monthly paid.

22   Here, even if the Property was in such condition that the monthly "as is" value is $0,
23   Plaintiffs made no rental payments and thus, there is nothing to offset. If fact, there was certainly
24   value in the premises because Plaintiffs continued to occupy the Property for several months despite
25   the alleged conditions. Accordingly, because Plaintiffs are not entitled to recover under their
26   habitability and related claims, the entire FAC should be dismissed.

27   ///

28   ///

-9-
**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1  **C.    The first and second claims for Negligent and Intentional Violation of Civil Code §
2         789.3 fails to state a cause of action because Plaintiffs have not alleged that Freddie
       Mac willfully terminated the utility services with the intent to terminate their
3         occupancy, and in any event, Plaintiffs have not established a landlord-tenant
       relationship with Freddie Mac**

4         Plaintiffs allege that defendants violated Civil Code § 789.9 by failing to restore utility

5  services despite having notice of the termination. (FAC ¶¶ 38, 44.)

6         Civil Code § 789.3 provides that a landlord shall not willfully terminate utility service with

7  intent to terminate the occupancy under any lease. Civil Code § 789.9(a). Under the negligence per

8  se doctrine, negligence is presumed if the plaintiff establishes: (1) the violation of a statute; (2) the

9  violation caused plaintiff's injury; (3) the injury resulted from the kind of occurrence the statue or

10 regulation was designed to prevent; and (4) the plaintiff was one of the class of persons the statute

11 was intended to protect. Daum v. SpineCare Med. Group, Inc. (1997) 52 Cal.App.4th 1285, 1306.

12        These claims fail in the first instance because Plaintiffs have not alleged that Freddie Mac

13 willfully terminated the utility services with the intent to terminate the occupancy. Further, on its

14 face, Section 789.3 requires a landlord-tenant relationship, which Plaintiffs have not and cannot

15 establish. Having anticipated the flaw in their theory, Plaintiffs appear to rely on the doctrine of

16 negligence per se. However, by definition, Section 789.3 requires intentional conduct. In any event,

17 the statute is intended to protect tenants under a lease with a landlord, which is not the case here.

18 Accordingly, the demurrer to the first and second claims must be sustained without leave to amend.

19 **D.    The third and fourth causes of action for Negligent Breach of the Implied Warranty
       of Habitability and related claims fails for lack of a tenancy with Freddie Mac**
20

21        Plaintiffs' fourth claim for negligent violation of various statutes (Civil Code §§ 1941.1,

22 1941.3, 1942.4, and Health & Safety Code § 17920.3) is tied to the third claim because these statutes

23 set the standard to establish a breach of the implied warranty of habitability. These statutes, as well

24 as the implied warranty, are also only defenses to eviction and Plaintiffs admit they were not evicted.

25 Plaintiffs essentially allege that the defendants failed to restore utility services and maintain the

26 premises in habitable condition. (FAC ¶¶ 12, 23, 25-26.) As a preliminary matter, there is no cause

27 of action for Negligent Breach of the Implied Warranty of Habitability.

28        A warranty of habitability is implied in all residential rental agreements. Green, 10 Cal.3d

**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1   at 629. Civil Code § 1941.1 sets out the standards for determining a landlord's implied warranty of
2   habitability. Knight v. Hallsthammar (1981) 29 Cal.3d 46, 58-59. Section 1941.1 provides that a
3   dwelling shall be deemed untenantable if any of the following are not in proper working condition
4   and in conformance with the applicable laws: (1) waterproofing and weather protection of the roof
5   and walls; (2) plumbing or gas facilities; (3) water and sewerage; (4) heating facilities; (5) electrical
6   system and lighting; (6) garbage facilities; and (7) floors, stairways and railing." Civ. Code §
7   1941.1. Civil Code § 1941.3 requires landlords to install locks on doors and windows. Civ. Code.
8   § 1941.3. Health and Safety Code § 17920.3 provides a list of property conditions which would
9   deem the property "substandard."

10        Under the negligence per se doctrine, negligence is presumed if the plaintiff establishes: (1)
11   the violation of a statute; (2) the violation caused plaintiff's injury; (3) the injury resulted from the
12   kind of occurrence the statue or regulation was designed to prevent; and (4) the plaintiff was one of
13   the class of persons the statute was intended to protect. Daum v. SpineCare Med. Group, Inc. (1997)
14   52 Cal.App.4th 1285, 1306. However, a landowner owes no duty to a trespasser or licensee to keep
15   the premises in safe condition. Giannini v. Campodonico (1917) 176 Cal. 548, 550. "The only duty
16   is to abstain from willful or wanton injury." Id. One who enters the premises does so at his own risk
17   and subject to all the ordinary risks which attach to such premises. Id. (citations omitted).

18        As discussed, these claims fail because there is no lease agreement between Plaintiffs and
19   Freddie Mac. Nor have Plaintiffs alleged any injury other than conclusory allegations of emotional
20   distress. To the extent Plaintiffs rely on the doctrine of negligence per se, these claims still fail
21   because the doctrine of negligence per se does not provide a private right of action for violation of
22   a statute. *See* Quiroz v. Seventh Ave. Center (2006) 140 Cal.App.4th 1256, 1285 (it operates to
23   establish a presumption of negligence for which the statute serves the subsidiary function of
24   providing evidence of an element of a preexisting common law cause of action). Curiously, despite
25   the extensive alleged conditions, Plaintiffs had continued to occupy the premises without the consent
26   of Freddie Mac and without payment of any rent. Accordingly, the demurrer to the third and fourth
27   claims must be sustained without leave to amend.

28   / / /

**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

**E.** **The fifth claim for Violation of Cal. Public Utilities Code § 777.1 fails to state a cause of action because Section 777.1 is inapplicable as Freddie Mac is not an utility company**

Plaintiffs appear to allege that the defendants violated Cal. Public Utilities Code § 777.1 by allegedly refusing to restore utility services. (FAC ¶ 87.) Public Utilities Code § 777.1 imposes notice requirements for utilities companies before utility services may be terminated. Cal. Pub. Util. Code § 777.1(a). However, Plaintiffs have not alleged, nor is Freddie Mac a utilities corporation providing utility services. Accordingly, because Section 777.1 is inapplicable, the demurrer to the fifth claim must be sustained without leave to amend.

**F.** **The sixth claim for Wrongful Eviction fails to state a cause of action because no eviction occurred as Plaintiffs admittedly surrendered possession to Freddie Mac's successor in interest**

Plaintiffs allege they were wrongfully evicted in violation of California law and the Richmond Ordinance. (FAC ¶ 93.) "It has been long settled that damages for wrongful eviction may be had for the loss of the use of the property to the end of the lease term." Rosano v. Superior Court (1983) 147 Cal.App.3d 92, 95. However, Plaintiffs' alleged lease was terminated by the foreclosure. In any event, Plaintiffs admittedly occupied the premises until April 2012. (FAC ¶ 32.) By this time Freddie Mac had already sold the Property to a third party buyer. (RJN Exh. E.) Accordingly, because no eviction occurred by Freddie Mac, the demurrer to the sixth claim must be sustained without leave to amend.

**G.** **The seventh claim for Intentional Infliction of Emotional Distress fails to state a cause of action for lack of outrageous conduct**

Plaintiffs allege in a conclusory manner that they suffered emotional distress because Freddie Mac failed to restore utility service and make repairs to the Property. (FAC ¶¶ 98-100.)

The elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant; (2) extreme and severe emotional distress to the plaintiff; (3) and actual and proximate causation between the two. Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 1001. To be outrageous, the defendant's conduct must be intentional or reckless, and it must be so extreme as to exceed all bounds of decency in a civilized community. Id.

Plaintiffs utterly fail to establish extreme and outrageous conduct. As explained at length,

-12-
**NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1   there is no relationship between Plaintiffs and Freddie Mac giving rise to a duty to provide utilities
2   or to make repairs. Plaintiffs simply refused to voluntarily vacate the premises. Accordingly, the
3   demurrer to the seventh claim must be sustained without leave to amend.

4   **F.**     **The eighth claim for Nuisance fails to state a cause of action for lack of standing**

5        Plaintiffs refer to the prior alleged acts and omissions as grounds for a claim of Nuisance.
6   (FAC ¶ 104.) The Civil Code defines nusance as "[a]nything that is injurious to health, including,
7   but not limited to, the illegal sale of controlled substances, or is indecent, or offensive to the senses,
8   or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life
9   or property..." Civ. Code § 3479. A sufficient property interest, such as a tenancy, is required to
10   bring an action based on nuisance. Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 920. Absent
11   an interest in the property, the demurrer to the eighth claim must be sustained without leave to
12   amend.

13   **G.**     **The demurrer should be sustained without leave to amend**

14        Plaintiffs fail to state any cause of action against Freddie Mac and there is no liability under
15   substantive law. The Court should sustain the demurrer without leave to amend because the FAC
16   was brought in bad faith, there is undue prejudice to Freddie Mac, and an amendment would be futile
17   as Plaintiffs cannot cure the deficiencies discussed herein. Plaintiffs have already had an opportunity
18   to amend and cure their claims and have clearly failed to do so.

19                                  **V. CONCLUSION**

20        For the reasons set forth herein, Freddie Mac requests this demurrer be sustained in its
21   entirety without leave to amend.

22                                PITE DUNCAN, LLP

23

24   Dated: October 22, 2012
                                  ERIC TSAI
25                                   Attorneys for Defendant
                                  FEDERAL   HOME   LOAN   MORTGAGE
26                                   CORPORATION

27

28

                                  -13-
  **NOTICE OF DEMURRER AND DEMURRER TO FIRST AMENDED COMPLAINT**

1 | <u>Roberts, et al. v. Bartels, et al.</u>
Superior Court of California County of Contra Costa - Martinez
2 | **Case No(s). MSC 11-02181**

3 | **DECLARATION OF SERVICE**

4 |     I, the undersigned, declare: I am, and was at the time of service of the papers herein referred
to, over the age of 18 years, and not a party to this action. My business address is 4375 Jutland
5 | Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

6 |     On October 22, 2012, I served the following document(s):

7 |     1.    NOTICE OF DEMURRER AND DEFENDANT FEDERAL HOME LOAN
MORTGAGE CORPORATION'S DEMURRER TO FIRST AMENDED
8 |         COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF
9 |

10 |     2.    REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT FEDERAL
HOME LOAN MORTGAGE CORPORATION'S DEMURRER TO FIRST
AMENDED COMPLAINT
11 |

on the parties in this action addressed as follows:
12 |

Monique Doryland
13 | Doryland Law Office
1814 Franklin Street, Suite 210
14 | Oakland, CA 94612
*Attorney for Plaintiffs*
15 |

  _X_  **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above. I am
16 | readily familiar with the firm's practice of collection and processing correspondence for
mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course
17 | of business. I am aware that on motion of party served, service is presumed invalid if postal
cancellation date or postage meter date is more than one day after date of deposit for mailing
18 | in affidavit.

19 |   ____  **BY CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed as indicated
above via certified mail, return receipt requested.
20 |

  ____  **BY FACSIMILE:** I personally sent to the addressee's facsimile number a true copy of the
21 | above-described document(s). I verified transmission with a confirmation printed out by the
facsimile machine used. Thereafter, I placed a true copy in a sealed envelope addressed and
22 | mailed as indicated above.

23 |   ____  **BY FEDERAL EXPRESS:** I placed a true copy in a sealed Federal Express envelope
addressed as indicated above. I am familiar with the firm's practice of collection and
24 | processing correspondence for Federal Express delivery and that the documents served are
deposited with Federal Express this date for overnight delivery.
25 |

    I declare under penalty of perjury under the laws of the State of California that the foregoing
26 | is true and correct.

27 |     Executed this 22nd day of October 2012, at San Diego, California.

28 |

                  MEGAN M. WHALEY

From:                                                    10/24/2012 17:11    #155 P.004/004

1   PETER J. SALMON (SBN 174386)
    CUONG M. NGUYEN (SBN 248586)
2   ERIC TSAI (SBN 273056)
    PITE DUNCAN, LLP
3   4375 JUTLAND DRIVE, SUITE 200
    P.O. BOX 17935
4   SAN DIEGO, CA 92177-0935
    TELEPHONE: (858) 750-7600
5   FACSIMILE: (619) 590-1385
    E-MAIL: etsai@piteduncan.com
6
    Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION
7



F I L E D
OCT 22 2012
S. TOSER CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____ Deputy Clerk
L. Nakasone

8                         SUPERIOR COURT OF CALIFORNIA

9                           COUNTY OF CONTRA COSTA

10  AYAN KAI ROBERTS, KERMANISHA        Case No. MSC 11-02181
    SANDERS,
11                                       REQUEST FOR JUDICIAL NOTICE IN
                Plaintiffs,              SUPPORT OF DEFENDANT FEDERAL
12                                       HOME LOAN MORTGAGE
            v.                           CORPORATION'S DEMURRER TO
13                                       FIRST AMENDED COMPLAINT
    DWAYNE BARTELS, BARTELS
14  PROPERTY MANAGEMENT, JACK           Hearing:
    BURNS, SR., JACK BURNS, JR.,        Date:  12-5.12
15  SECURITY PACIFIC REAL ESTATE; IRA   Time:  9:00 A.M.
    G. ROSS, SR., FEDERAL HOME LOAN     Dept.: 33
16  MORTGAGE CORPORATION, and its       Judge: 33
    successors and assigns, and DOES 1-XX,
17  inclusive,                          First Amended Complaint Filed:
                                                April 20, 2012
18              Defendants.             Trial Date:  Not Yet Set

19                                              FAX FILING

20      Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac")

21  hereby respectfully requests that this Court take judicial notice of the following documents pursuant

22  to Evidence Code § 452. "A complaint may be read as including matters judicially noticed, and

23  thereby made subject to attack on demurrer on the basis of such matters." Bethman v. City of Ukiah

24  (1989) 216 Cal.App.3d 1395, 1399. A court may take judicial notice of facts which neither party

25  disputes. Id. citing Evid. Code § 452(h).

26      EXHIBIT A: Deed of Trust recorded on May 1, 2003, in the official records of Contra

27  Costa County as Document No. 2003-0199201.

28      EXHIBIT B: Trustee's Deed Upon Sale recorded on October 4, 2010, in the official records

1  of Contra Costa County as Document No. 2010-0212610.

2  **EXHIBIT C:** Summons and Complaint for Case No. RS 11-0406 in the Superior Court of

3  California for Contra Costa County.

4  **EXHIBIT D:** Request for Dismissal for Case No. RS 11-0406 in the Superior Court of

5  California for Contra Costa County.

6  **EXHIBIT E:** Grant Deed recorded on February 17, 2012, in the official records of Contra

7  Costa County as Document No. 2012-0037449.

8  PITE DUNCAN, LLP

9

10 Dated: October 22, 2012

                          ERIC TSAI
11                        Attorneys for Defendant
                          FEDERAL   HOME   LOAN   MORTGAGE
12                        CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
**REQUEST FOR JUDICIAL NOTICE**

# EXHIBIT A

RECORDED AT THE REQUEST
OF PLACER TITLE CO.# 810417l-RM

/7

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2003-0199201-00
Acct 12- Placer Title
Thursday, MAY 01, 2003 08:00:00
MIC      $1.00|MOD    $17.00|REC    $21.00
TCF     $18.00|DAF     $1.50|REF     $0.20
Ttl Pd    $57.00          Nbr-0001459800
                          rrc/R2/1-17

RECORDING REQUESTED BY:
After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3

Placer Title

Escrow No.: 810-4171

----------------- [Space Above This Line For Recording Data] -----------------

## DEED OF TRUST

MIN  100052599927162590

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **APRIL 25, 2003,**                together with all Riders to this document.
(B) "Borrower" is **IRA G ROSS SR An Unmarried Man, AS HIS SOLE & SEPARATE PROPERTY.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **FLAGSTAR BANK, FSB.**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01   Initials:
© 1999-2002 Online Documents, Inc.                **Page 1 of 12**          CAEDEED        CAEDEDL  0205
V1 WBCD LOAN # 999271625                                                   04-23-2003 17:29

199201

Lender is a **FEDERALLY CHARTERED SAVINGS BANK**                    organized and existing under the laws of
**UNITED STATES OF AMERICA.**                    Lender's address is **5151 CORPORATE DR,**
**TROY, MI   48098-2639.**


(D) "Trustee" is **JOAN H. ANDERSON.**


(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **APRIL 25, 2003.**          The Note states that Borrower owes Lender ************************ **TWO HUNDRED EIGHT THOUSAND AND NO/100** ********************************************************* Dollars (U.S.   **$208,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2033.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider   ☐ Other(s) [specify]
☒ 1-4 Family Rider           ☐ Biweekly Payment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA~Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01       Initials: _____
© 1999-2002 Online Documents, Inc.                    **Page 2 of 12**                              CAEDEDL
**V1 WBCD LOAN # 999271625**                                                 04-23-2003 17:29

**199201**

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
**COUNTY**                        [Type of Recording Jurisdiction] of **Contra Costa**

[Name of Recording Jurisdiction]:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
**AP #: 534-320-030**

which currently has the address of **556 & 556 A 8th Street, Richmond,**

[Street] [City]

California  **94801**            ("Property Address"):
           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01      Initials:
© 1999-2002 Online Documents, Inc.                    Page 3 of 12                                      CAEDEDL
V1 WBCD LOAN # 999271625                                                          04-23-2003 17:29

199201

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower

**199201**

any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

199201

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2002 Online Documents, Inc.                     Page 7 of 12
V1 WBCD LOAN # 999271625

Initials: _____
CAEDEDL
04-23-2003 17:29

199201

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can

199201

agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

199201

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and

radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents, Inc.                    **Page 10 of 12**
V1  WBCD LOAN # 999271625

Initials: _____
CAEDEDL
04-23-2003 17:29

199201

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

199201

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
IRA G. ROSS SR

**State of CALIFORNIA**                    **County of ALAMEDA**

On 4·25·03 _____, before me, _Rapunzel Martinez_ personally appeared

IRA G. ROSS, SR _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

RAPUNZEL MARTINEZ
COMM. # 1217623
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. APRIL 29, 2003

199201

# ILLEGIBLE NOTARY SEAL DECLARATION

## (Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

**Name of Notary Public:**      **RAPUNZEL MARTINEZ**

**Commission Number:**       **1217523**

**Notary Public State:**         **California**

**County:**                            **Alameda**

**Date Commission Expires: 04-29-2003**

Signature of Declarant: _____ *Sadousky* _____

Print Name of Declarant: _____ C. Sadousky _____
AGENT FOR PLACER TITLE COMPANY

**City & State of Execution:   Berkeley, California**

Date Signed: _____ 04-27-2003 _____

**(The above information must be legible for scanning)**

**199201**

Order No.    810-4171

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA, CITY OF RICHMOND, AND IS DESCRIBED AS FOLLOWS:

THE SOUTHERN 8 FEET OF LOT 10 AND ALLOF LOT 11, BLOCK 7, MAP OF TERMINAL TRACT FILED FEBRUARY 19, 1907, BOOK B OF MAPS, PAGE 36, CONTRA COSTA COUNTY RECORDS.

A.P.N. 534-320-030

LEGAL.EXHIBIT

199201

MIN #: 100052599927162590

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this     25TH     day of APRIL, 2003
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to FLAGSTAR BANK,
FSB, A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: 556 & 556 A 8th Street, Richmond, CA 94801.

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**
In addition to the Property described in Security Instrument, the following items now
or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever
now or hereafter located in, on, or used, or intended to be used in connection with
the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto,
shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are
referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower shall comply with all
laws, ordinances, regulations and requirements of any governmental body applicable
to the Property.
**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall
not allow any lien inferior to the Security Instrument to be perfected against the
Property without Lender's prior written permission.

Initials:

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3170 1/01
© 1999-2002 Online Documents, Inc.          Page 1 of 3          F3170RDU  F3170RLU  0205
V1 WBCD LOAN # 999271625                                        04-23-2003 17:29

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials:

MULTISTATE 1-4 FAMILY RIDER–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
© 1999-2002 Online Documents, Inc.               **Page 2 of 3**                                    F3170RLU
V1 WBCD LOAN # 999271625                                              04-23-2003 17:29

199201

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

  I.  **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
IRA G. ROSS SR

**END OF DOCUMENT**

MULTISTATE 1-4 FAMILY RIDER–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3170 1/01
© 1999-2002 Online Documents, Inc.          **Page 3 of 3**                      F3170RLU
V1 WBCD LOAN # 999271625                                         04-23-2003 17:29

# EXHIBIT B

Recording Requested By
ServiceLink

WHEN RECORDED MAIL TO:

CITIMORTGAGE, INC.
1000 TECHNOLOGY DRIVE, MS 314
O FALLON MO 63368-2240

TRA #   08133
Trust No. 1244056-10
Loan No. XXXXX4738

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC— 2010-0212610-00

Check Number

Monday, OCT 04, 2010 08:53:36
RNA    $0.00|S34   $10.00|MOD    $2.00
REC    $12.00|FTC   $1.00|RED    $1.00
ERD    $1.00|

Ttl Pd    $27.00           Nbr-0000610000

Space Above This Line For Recorder

MAIL TAX STATEMENT TO:

Same as above

The undersigned grantor declares
under penalty of perjury.

Documentary Transfer Tax $.00
__X__ Grantee was the foreclosing beneficiary.
consideration $84,019.50
unpaid debt $219,443.08
non exempt amount $
___ Computed on the consideration or value of
property conveyed.
___ Computed on the consideration of value less
liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent
AP# 534-320-030          Selwa Ishoo

224750          **TRUSTEE'S DEED UPON SALE**

CAL-WESTERN RECONVEYANCE CORPORATION (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**FEDERAL HOME LOAN MORTGAGE CORPORATION** (herein called Grantee) the real property in the
county of **CONTRA COSTA**, State of California described as follows:

**THE SOUTHERN 8 FEET OF LOT 10 AND ALL OF LOT 11, BLOCK 7, MAP OF TERMINAL
TRACT FILED FEBRUARY 19, 1907, BOOK B OF MAPS, PAGE 36, CONTRA COSTA COUNTY
RECORDS.**
The street address and other common designation, if any, of the real property described above is purported to be:
**556 & 556 A 8TH STREET
RICHMOND CA 94801**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**IRA G ROSS SR AN UNMARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY** as Trustor,
recorded May 01, 2003, as Document No. 2003-0199201-00, in Book XXX, page XXX, of Official Records in
the Office of the Recorder of CONTRA COSTA County, California; and pursuant to the Notice of Default
recorded November 17, 2009, as Document No. 2009-273153 in Book XX, page XX of Official Records of
said County, Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of
copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the
notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

TDUSCA.DOC                    Page 1 of 2

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

Rev. 05/04/10

TRA # 08133
Trust No. 1244056-10
Loan No. XXXXX4738

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **September 23, 2010** to said Grantee, being the highest bidder therefore, for **$84,019.50** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

CAL-WESTERN RECONVEYANCE CORPORATION

Dated: September 23, 2010

Wendy V. Perry, A.V.P.

State of California )
County of San Diego)

On **SEP 2 9 2010** before me, _____ **Jeffrey Starling** _____,
a Notary Public, personally appeared _____ **Wendy V. Perry, A.V.P.** _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

(Seal)

JEFFREY STARLING
COMMISSION # 1858765
Notary Public-California
SAN DIEGO COUTY
My Comm. Expires Jul 24, 2013

TDUSCA.DOC

Rev. 05/04/10

END OF DOCUMENT

# SUMMONS
## *(CITACION JUDICIAL)*
### UNLAWFUL DETAINER—EVICTION
### *(RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)*

| | FOR COURT USE ONLY |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**      Kai Roberts and Does I through X, Inclusive
*(AVISO AL DEMANDADO):*

**YOU ARE BEING SUED BY THE PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Federal Home Loan Mortgage Corporation, Its Successors and/or Assigns

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov), o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| 1. | The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | Superior Court of California<br>County of Contra Costa - Richmond<br>100 37th Street<br>Richmond, CA 94805 | CASE NUMBER:<br>*(Número del caso):*<br>RS 11 - 0406 |
|---|---|---|---|

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

| JASON W. SHORT, SBN 263667 | 4375 Jutland Drive, Suite 200 | (phone): (858) 750-7600 |
|---|---|---|
| RENEE BELCASTRO, SBN 270492 | P.O. Box 17934, San Diego, CA 92177 | (fax): (619) 590-1385 |

3. *(Must be answered in all cases.)* An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400—6415) ☒ did not ☐ did for compensation give advice or assistance with this form. *(If plaintiff has received any help or advise for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

| Date:<br>*(Fecha)* | MAR 08 2011 | Clerk, by<br>*(Secretario)* | L. PRITCHETT | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (form POS-010).)*

| [SEAL] | 4. NOTICE TO THE PERSON SERVED: You are served<br>a. ☐ as an individual defendant<br>b. ☐ as the person sued under the fictitious name of *(specify):*<br>c. ☐ as an occupant<br>d. ☐ on behalf of *(specify):*<br>   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)<br>   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)<br>   ☐ CCP 416.40 (association of partnership)     ☐ CCP 416.90 (authorized person)<br>   ☐ CCP 415.46 (occupant)     ☐ Other *(specify):*<br>5. ☐ by personal delivery on *(date):* |
|---|---|

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1, 2009]

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

Code of Civil Procedure, §§ 412.20, 415.456, 1167
www.courtinfo.ca.gov

**SUM-130**

| PLAINTIFF *(Name):* Federal Home Loan Mortgage Corporation | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* Kal Roberts, et al. | |

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advise for pay from an unlawful detainer assistant):*
   a. Assistant's name:
   b. Telephone no.:
   c. Street address, city, and zip:

   d. County of registration:
   e. Registration no.:
   f. Registration expires on *(date):*

**SUMMONS—UNLAWFUL DETAINER—EVICTION**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JASON W. SHORT, SBN 283667<br>RENEE BELCASTRO, SBN 270492<br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17934, San Diego, CA 92177-0934<br>     Phone:  858-750-7600<br>     Facsimile:  619-590-1385<br>ATTORNEY FOR *(Name):*  Federal Home Loan Mortgage Corporation | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA | |
|---|---|
| STREET ADDRESS:  100 37th Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:  Richmond, CA 94805<br>BRANCH NAME:  County of Contra Costa - Richmond | |

CASE NAME: Federal Home Loan Mortgage vs. Kal Roberts

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☐ Unlimited ☒ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | | ☐ Counter ☐ Joinder<br><br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | | RS 11-0406<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☒ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 1
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 3, 2011

RENEE BELCASTRO, SBN 270492
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Standards of Judicial Administration, std 3.10

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
    *or wrongful eviction)*
  Contract/Warranty Breach—Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
  Writ–Other Limited Court Case
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-domestic*
    *relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

NOTICE:   EVERYONE WHO LIVES IN ~ ~ RENTAL UNIT MAY BE EVICTED BY COUR. ~RDER. READ THIS FORM IF YOU
LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1.   If you live here and you do not complete and submit this form within 10 days of the date of service shown on this form,
     you will be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2.   If you file this form, your claim will be determined in the eviction action against the persons named in the Complaint.
3.   If you do not file this form, you will be evicted without further hearing.

| CLAIMANT OR CLAIMANT'S ATTORNEY (Name and Address):     TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name): | |

| | |
|---|---|
| NAME OF COURT: | Superior Court of California - County of Contra Costa - Richmond |
| STREET ADDRESS: | 100 37th Street |
| MAILING ADDRESS: | Richmond, CA 94805 |
| CITY AND ZIP CODE: | |
| BRANCH NAME: | |
| PLAINTIFF: | Federal Home Loan Mortgage Corporation, its successors and/or assigns |
| DEFENDANT: | Kai Roberts, and DOES I through X, inclusive |

**PREJUDGMENT CLAIM OF RIGHT TO POSSESSION**

Complete this form only if ALL of these statements are true:
1. You are NOT named in the accompanying Summons and Complaint.
2. You occupied the premises on or before the date the unlawful detainer (evic-
   tion) Complaint was filed.
3. You still occupy the premises.

CASE NUMBER: **RS 11-0406**

(To be completed by the process server)
DATE OF SERVICE:

(Date that this form is served or delivered,
and posted, and mailed by the officer or
process server)

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1.   My name is (specify):

2.   I reside at (street address, unit No., city and ZIP code):

3.   The address of "the premises" subject to this claim is (address):

     556 8th Street Apt A, Richmond, CA 94801

4.   On (insert date): [          MAR 03 2011          ], the landlord or the landlord's authorized agent filed a complaint to recover
     possession of the premises. (This date is the court filing date on the accompanying Summons and Complaint.)

5.   I occupied the premises on the date the complaint was filed (the date in item 4). I have continued to occupy the premises ever since.

6.   I was at least 18 years of age on the date the complaint was filed (the date in item 4).

7.   I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed (the date
     in item 4).

8.   I was not named in the Summons and Complaint.

9.   I understand that if I make this claim of right to possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10.  (Filing fee) I understand that I must go to the court and pay a filing fee of $_____ or file with the court the form
     "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file with the court the form
     waiver of court fees within 10 days from the date of service on this form (excluding court holidays), I will not be entitled to
     make a claim of right to possession.

(Continued on reverse)

| CP10.5 [New January 1, 1991] | PREJUDGMENT CLAIM OF RIGHT TO POSSESSION | Code of Civil Procedure, §§ 415.46, 715.010, 715.020, 1174.25 |

| PLAINTIFF *(Name)*: FEDERAL HOME LOAN MORTGAGE CORPORATION | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: KAI ROBERTS, et al | |

**NOTICE: If you fail to file this claim, you will be evicted without further hearing.**

11. *(Response required within five days after you file this form)* I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

12. **Rental agreement.** I have *(check all that apply to you)*:

a. ☐ an oral rental agreement with the landlord.

b. ☐ a written rental agreement with the landlord.

c. ☐ an oral rental agreement with a person other than the landlord.

d. ☐ a written rental agreement with a person other than the landlord.

e. ☐ other *(explain)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**WARNING: Perjury is a felony punishable by imprisonment in the state prison.**

Date:

.................................................................................
(TYPE OR PRINT NAME)                        (SIGNATURE OF CLAIMANT)

**NOTICE**: If you file this claim of right to possession, the unlawful detainer (eviction) action against you will be determined at trial.   At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

**– NOTICE TO OCCUPANTS –**

**YOU MUST ACT AT ONCE if all the following are true:**

1. **You are NOT named in the accompanying Summons and Complaint.**
2. **You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.** *(The date is the court filing date on the accompanying Summons and Complaint.)*
3. **You still occupy the premises.**

*(Where to file this form)* You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the reverse of this form) at the court where the unlawful detainer (eviction) complaint was filed.

*(What will happen if you do not file this form)* If you do not complete and submit this form ( and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you will be evicted without a hearing.*

1  JASON W. SHORT, SBN 263667
   RENEE BELCASTRO, SBN 270492
2  PITE DUNCAN, LLP
   4375 Jutland Drive
3  Suite 200; P.O. Box 17934
   San Diego, CA 92177-0934
4  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
5
6  Attorneys for Plaintiff Federal Home Loan Mortgage Corporation, its successors and/or assigns

7
   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8
   **COUNTY OF CONTRA COSTA**
9
10 Federal Home Loan Mortgage Corporation, its    | CIVIL ACTION NO.: RS 11-0406
   successors and/or assigns
11                                                COMPLAINT FOR UNLAWFUL
              Plaintiff(s),                       DETAINER

12 vs.                                            AMOUNT DEMANDED DOES NOT
                                                 EXCEED $10,000
13 Kai Roberts, and DOES I through X, inclusive,
                                                 LIMITED CIVIL CASE
14            Defendant(s).
                                                 Foreclosure
15 Plaintiff(s) allege(s):

16                        **PARTIES AND JURISDICTION**

17      1.      That Plaintiff is entitled to the possession of, and is the recorded owner of a parcel of

18 real property and the dwelling thereon located at 556 8th Street Apt A, Richmond, CA 94801. Said

19 property is located within the above-captioned Judicial District and County (hereinafter "Property").

20      2.      The true names and capacities, whether individual, corporate, associate or otherwise

21 of the Defendants named herein as DOES I through X, in occupancy are unknown to Plaintiff, who

22 therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to show

23 their true names and capacities when they have been ascertained.

24      3.      That Defendants, and each of them, are currently in possession of and occupying the

25 above-described premises.

26 ///

27 ///

28 ///

                                          -1-

1  ## CAUSE OF ACTION FOR UNLAWFUL DETAINER

2      4.     That Plaintiff purchased the property at a Trustee's Sale held on September 23, 2010

3  in accordance with California Civil Code Section 2924 et. seq. and the title has been duly perfected.

4      5.     That Plaintiff has a executed Trustee's Deed Upon Sale, a copy of which is attached

5  hereto as **Exhibit 1,** incorporated herein as if set forth in full.

6      6.     Upon the passing of ownership to the Plaintiff, all prior rental agreements with the

7  tenants of the former owner terminated.

8      7.     That the property is a subject to the Richmond Code of Ordinances ("RCO")

9  regulating grounds for eviction.

10      8.     That Plaintiff has substantially complied with the requirements of the RCO regulating

11  evictions.

12      9.     That upon the foreclosure sale the RCO by its operation created a rental agreement

13  between Plaintiff and Defendants, despite the existence of contract and real property principles

14  which would have otherwise eliminated Defendant's tenancy upon foreclosure.

15      10.    That Plaintiff caused to be served on defendants notice of the change of ownership

16  and instructions where and how to pay their rent to the new owner on **three occasions** prior to

17  serving a notice to pay rent or quit: on December 2, 2010, December 23, 2010, and January 15, 2011.

18  Copies of those Notices and the proofs of service thereof are attached hereto as **Exhibits 2 - 4** and

19  incorporated herein by reference.

20      11.    That Plaintiff has just cause to evict said Defendant(s) pursuant to RCO section

21  7.105.020 (1) for the Defendant(s) failure to pay rent to which the landlord is entitled, and said

22  failure has continued after service on the Defendant(s) of a written notice setting forth the amount of

23  rent then due and requiring to be paid, within a period, specified in the notice, of not less than three

24  days.

25      12.    That the lease agreement is not in the possession of the Plaintiff or any of Plaintiff's

26  agents or employees.

27  /././

28  /././

-2-

1    13.    On or about February 20, 2011, Plaintiff served Defendant(s) a written Three-Day
2  Notice to Pay Rent or Quit (the "Notice") requiring Defendant(s) and "All Persons in Possession" of
3  the property to pay rent or quit and deliver up possession of the property within three (3) days after
4  service of the Notice. A copy of said Notice is attached hereto as **Exhibit 5** and incorporated herein
5  as if set forth in full. All of the facts contained in the Notice are true and the Notice was served in
6  compliance with the Rent Stabilization Ordinance. Service of the Notice was made in compliance
7  with Section 1162 Code of Civil Procedure.

8    14.    More than three (3) days have elapsed since service of the Notice and Defendant(s)
9  have failed and refused to pay rent or deliver up possession of the property after expiration of the
10  Notice. Defendant(s) continue in possession of the property without Plaintiff's permission or
11  consent.

12    15.    Said Defendant(s) unlawfully are continuing in possession of said premises after said
13  demand and without permission of the Plaintiff and under not claim of right.

14    16.    That Plaintiff has performed all the necessary conditions and given all the required
15  notice to bring this Unlawful Detainer action.

16    17.    The reasonable value of the use and occupancy of the Property is the sum of $27 per
17  day, and damage to the Plaintiff caused by Defendant's unlawful detention thereof has accrued at
18  said rate since February 24, 2011, and will continue to accrue at said rate so long as Defendant(s)
19  remains in possession of the property.

20  /./.
21  /./.
22  /./.
23  /./.
24  /./.
25  /./.
26  /./.
27  /./.
28  /./.

-3-

Recording Requested By
ServiceLink

WHEN RECORDED MAIL TO:

CITIMORTGAGE, INC.
1000 TECHNOLOGY DRIVE, MS 314
O FALLON MO 63368-2240

TRA #      08133
Trust No. 1244056-10
Loan No. XXXXX4738

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2010-0212610-00
Check Number
Monday, OCT 04, 2010 08:53:38
RNA      $0.00|634   $10.00|MOD   $2.00
REC      $12.00|FTC   $1.00|RED   $1.00
ERD      $1.00|
Ttl Pd   $27.00           Nbr-0000610000

Space Above This Line For Recorder

MAIL TAX STATEMENT TO:

Same as above

The undersigned grantor declares
under penalty of perjury.

Documentary Transfer Tax $.00
X Grantee was the foreclosing beneficiary.
consideration $84,019.50
unpaid debt $219,443.08
non exempt amount $
____Computed on the consideration or value of
property conveyed.
____Computed on the consideration or value less
liens or encumbrances remaining at time of sale.

_____
Signature of Declarant or Agent
AP# 534-320-030         Selwa Ishoo

224750        TRUSTEE'S DEED UPON SALE

CAL-WESTERN RECONVEYANCE CORPORATION (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
FEDERAL HOME LOAN MORTGAGE CORPORATION (herein called Grantee) the real property in the
county of CONTRA COSTA, State of California described as follows:

THE SOUTHERN 8 FEET OF LOT 10 AND ALL OF LOT 11, BLOCK 7, MAP OF TERMINAL
TRACT FILED FEBRUARY 19, 1907, BOOK B OF MAPS, PAGE 36, CONTRA COSTA COUNTY
RECORDS.
The street address and other common designation, if any, of the real property described above is purported to be:
556 & 556 A 8TH STREET
RICHMOND CA 94801

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
IRA G ROSS SR AN UNMARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY as Trustor,
recorded May 01, 2003, as Document No. 2003-0199201-00, in Book XXX, page XXX, of Official Records in
the Office of the Recorder of CONTRA COSTA County, California; and pursuant to the Notice of Default
recorded November 17, 2009, as Document No. 2009-273153 in Book XX, page XX of Official Records of
said County, Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of
copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the
notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

TDUSCA.DOC                    Page 1 of 2

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

Rev. 05/04/10

EXHIBIT 1

TRA # 08133
Trust No. 1244056-10
Loan No. XXXXX4738

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on September 23, 2010 to said Grantee, being the highest bidder therefore, for $84,019.50 cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

CAL-WESTERN RECONVEYANCE CORPORATION

Dated: September 23, 2010

Wendy V. Perry, A.V.P.

State of California )
County of San Diego )

On SEP 29 2010 before me, _____ Jeffrey Starling _____
a Notary Public, personally appeared Wendy V. Perry, A.V.P. _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

(Seal)

JEFFREY STARLING
COMMISSION #1858768
Notary Public-California
SAN DIEGO COUNTY
My Comm. Expires Feb 27 2013

END OF DOCUMENT

**PITE**
**DUNCAN**
**LLP**

*San Diego*

Steven W. Pite CA/NV/WA
John D. Duncan CA/TX/NV/A
Peter J. Salmon
CA/ID/UT/WA
David E. McAllister
AZ/CA/NH/OR/UT/WA

Rochelle L. Stanford
AZ/CA/HI/NJ
Jacqueline E. Salmon
HI AZ/CA/UT
Laurel I. Handley
AK/CA/ID/NV
Daniel H. Gomez CA/TX
Eddie R. Jimenez CA/NV/TX
Susan L. Pelji AK/CA/HI
Douglas L. Valeas AZ/CA
Cuong M. Nguyen CA/NV
Casper J. Rankin CA/OR
Charlss A. Correla CA/HI
Melodie A. Whitaker CA/NV
Brian A. Paino AZ/CA/NV/IL
Christopher McDermott CA
Julian A. Benbow CA
Thomas N. Abbott CA
Drew A. Callahan CA
Natalie A. Nguyen CA
Gamil M. Aldarraji CA
Allen Chiu CA/MN
Erin L. Lapoy CA
John B. Acierno CA
William L. Partridge CA
Christopher L. Peterson CA
Jason W. Short CA
Jason L. Glazer CA
Joseph C. Delmotte CA
Winifred Carl CA/NV/TX
Brianool K. Thiara CA
Stefanie A. Nahri CA
Anne W. Hampton CA
Paul Quinn CA
Theo T. Pham CA
Trevin J. Lane CA
Carin M. Stalcup CA

*Mailing - Bankruptcy*
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
*Mailing - Eviction*
4375 Jutland Drive, Suite 200
P.O. Box 17934
San Diego, CA 92177-0924
Ph.: (858) 750-7600
Fax: (619) 590-1385

*Orange County*
Elena S. Moeder CA
Bryan T. Brown CO/TX
Eric J. TemenCA
Christopher J. DanzwaldCA
Catherine T. Vinh CA
David M. Liu CA
1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph: (714) 361-3613
Fax: (714) 385-2646
*Arizona Office*
Christina M. Harper
Kyle J. Shelton
Charles L. Prostsin
Phoenix, AZ
*Hawaii Office*
David D. Raven
Honolulu, HI
*Nevada Office*
Gregg A. Hubley
Asr L. Van Patten
Christian S. Shirud
Jane Bunnell
Allison H. Schmidt
Christopher A. J. Swift
David C. Watling
Las Vegas, NV
*Oregon Office*
Erik X. Marshick
*Texas Office*
Tracy D. Fink
Claire A. Rock
Houston, PA
*Utah Office*
Spencer Macdonald
*Washington Office*
Jesse Baker OR/WA
Shannon L. Kingston
Seattle, WA

November 29, 2010

KAI ROBERTS AND ALL OCCUPANTS
556 8TH STREET APT A
RICHMOND, CA 94801

Re: Property: 556 8th Street Apt A, Richmond, CA 94801
Our File No.: 000028-007221

Dear Occupants:

This office represents Federal Home Loan Mortgage Corporation. On or about, Federal Home Loan Mortgage Corporation purchased the above-referenced property at a foreclosure sale. Ira G. Ross, Sr. no longer owns the property. A copy of the Trustee's Deed Upon Sale showing Federal Home Loan Mortgage Corporation now owns the property is enclosed. Despite the foreclosure, tenants have specific rights pursuant to the Ordinance No. 16-09 N.S. Richmond Municipal Code to Residential Eviction Control For Properties in Foreclosure "Ordinance", and the Ordinance may apply to your occupancy of the property if you are a tenant.

PLAINTIFF has no information regarding you or your occupancy with the previous owner. Enclosed is a "Change in Ownership Occupant Questionnaire." Within the next TEN (10) DAYS of receiving this notice, please fill out the Questionnaire as completely as you can and return it, along with a copy of your lease and evidence of rent payments, by fax to (619) 590-1385, or by mail to:

PITE DUNCAN, LLP
ATTN: EVICTION DEPT.
RE: FILE NO.: 000028-006839
4375 JUTLAND DR., SUITE 200
SAN DIEGO, CA 92117

It is very important that you contact me within the next ten (10) days. If you do not comply with this demand letter within ten (10) days of receipt, Federal Home Loan Mortgage Corporation may be forced to pursue legal action.

**If you are a tenant:**
CEASE MAKING ANY RENTAL PAYMENTS TO THE PREVIOUS LANDLORD. TO REMAIN AS A TENANT, YOU MUST ALSO CONTINUE TO MAKE YOUR RENTAL PAYMENTS TIME TO FEDERAL HOME LOAN MORTGAGE CORPORATION. YOUR RENTAL PAYMENTS SHOULD BE SENT DIRECTLY TO PITE DUNCAN, LLP, AT THE ADDRESS ABOVE.

If you have questions, please contact Qiana Allen at 619-326-2440. Thank you in advance for your cooperation.

PITE DUNCAN, LLP

Dated: November 29, 2010

*Carla Stalcup*
CARLA M STALCUP
JASON W SHORT

* Information regarding the Ordinance is available by contacting The Council of The City of Richmond. The Council of the City of Richmond is located at 440 Civic Center Plaza, Richmond, CA 94804, telephone (510) 620-6861, online at http://www.ci.richmond.ca.us. If you have questions about your legal rights, please consult with an attorney.

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
See above or visit www.piteduncan.com re individual attorney admissions.

**EXHIBIT 2**

# AFFIDAVIT OF MAILING
By Interface Ino.
4241 Ponderosa Ave, Suite G
San Diego, CA  92123

Reference No:          000028-007221
Mailing Number:          0001354-01

STATE OF CALIFORNIA                )
                                   ) SS
COUNTY OF SAN DIEGO                )

I, _____**Brendan McMullen**_____, being duly sworn, depose and say:

I am and at all times herein mentioned a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California:

That at the request of PD Evictions on 11/30/2010, I deposited in the United States mail a copy of the attached document, in separate sealed envelopes, in accordance with the checked mailing classes defined below, postage prepaid, to the address list on exhibit A, attached hereto and made a part hereof.

⊠ First Class           ☐ Certified
⊠ Certified Return      ☐ Registered          ☐ Registered International

_____
Affiant

Exhibit A to Affidavit of Mailing

| 11/30/2010 | Sender: | PD Evictions<br>4375 Jutland Drive, Suite 200<br>San Diego CA 92117 |

Postal Class:   Certified - Ret

Type of Mailing:   Window

Affidavit Attachment: C901354-01 000 111011455 PD_Evict000254

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 7196300248400724807960 | | Kai Roberts | 556 8th Street Apt A | Richmond, CA 94801 |

Exhibit A to Affidavit of Mailing

11/30/2010          Sender:

PO Evictions
4375 Jutland Drive, Suite 200
San Diego CA 92117

Postal Class:     First Class

Type of Mailing:  Window

Affidavit Attachment 60001354-01 000 111011455 PO_Evict000254

Postal Number   Sequence Recipient Name          Address Line 1/3            Address Line 2/4

1199800248400257 1951   Kai Roberts              556 8th Street Apt A        Richmond, CA 94801
              0

## PITE DUNCAN LLP

**San Diego**

Steven W. Pite *CA/NY/HA*
John D. Duncan *CA/NV*
Peter J. Salmon
*CA/AZ/NV/WA*
David E. McAllister
*AK/CA/HI/OR/NV/WA*

Rochelle L. Stanford
*AZ/CA/GA/NV*
Josephine S. Salmon
*AZ/NV/CA/NY*
Laurel I. Handley
*AZ/CA/ID/NV*
Daniel R. Gamez *CA/TX*
Eddie R. Jimenez *CA/NY/TX*
Susan La Pella *AZ/CA/NV*
Douglas A. Toleno *AZ/CA*
Cuong M. Nguyen *CA/NV*
Casper J. Rankin *CA*
Cheriza A. Corralo *CA*
Melodie A. Whitson *CA*
Brian A. Paino *CA/TX/VA*
Christopher M. McDermott *CA*
Jillian A. Benbow *CA*
Thomas N. Abbott *CA*
Tracey D. Mabry *TX*
Drew A. Callahan *CA*
Natalie T. Nguyen *CA*
Alyssa K. McCorkle *AZ/CA*
Caroline M. Robert *CA*
Conall M. Anderson *CA*
Ellen Cho *CA/NV*
Jose A. Garcia *CA*
Brin L. Leavy *CA*
Angela M. Fontanini *CA*
Jacque A. Gruber *CA*
John B. Acierno *CA*
William L. Partridge *CA*
Christopher L. Peterson *CA*
Katie L. Johnson *CA*

**Mailing**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

**Overnight**
4375 Jutland Drive, Suite 200
San Diego, CA 92117

Ph.: (858) 750-7600
Fax: (619) 590-1385

**Orange County**

Bruce J. Quilligan *CA*
Kerry M. Fronick *CA/NV*
Elena C. Maeder *CA*
Bryon T. Brown *CA/TX*
Michael J. Fox *CA*

1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph.: (714) 361-3511
Fax: (714) 361-2258

**Arizona Office**
Charles L. Firestein
Phoenix, AZ

**Hawaii Office**
David B. Rosen
Honolulu, HI

**Washington Office**
Seattle, WA

**Texas Office**
William P. Weaver, Jr.
San Antonio, TX

---

December 23, 2010

KAI ROBERTS and ALL OCCUPANTS
556 8TH STREET APT A
RICHMOND, CA 94801

## SECOND NOTICE

Re:  Property:  556 8th Street Apt A, Richmond, CA 94801
     Our File No.: 000028-007221

Dear Occupants:

This office represents Federal Home Loan Mortgage Corporation. On or about 9/23/2010, Federal Home Loan Mortgage Corporation purchased the above-referenced property at a foreclosure sale. Ira G. Ross, Sr. no longer owns the property. A copy of the Trustee's Deed Upon Sale showing Federal Home Loan Mortgage Corporation now owns the property is enclosed. Despite the foreclosure, tenants have specific rights pursuant to the Ordinance No. 16-09 N.S. Richmond Municipal Code to Residential Eviction Control For Properties in Foreclosure "Ordinance", and the Ordinance may apply to your occupancy of the property if you are a tenant*.

If you are a tenant at this property, please consider this a **SEVEN (7) DAY DEMAND LETTER** for your **RENT PAYMENT** and the following:

1.     Completed "Change in Ownership Occupant Questionnaire;"
2.     Copy of your current lease or rental agreement; and
3.     Proof of rent payments.

If you wish to remain as a tenant at this property, you must timely make your rent payments for Federal Home Loan Mortgage Corporation's benefit. Your rent payment for October 1, 2010 through December 31, 2010 is due on now. Please send a certified check or money order payable to Pite Duncan, LLP Trust Account. Please mail the above information and your rent payment to:

PITE DUNCAN, LLP
ATTN: EVICTION DEPT.
RE: FILE NO. 000028-007221
4375 JUTLAND DR.; SUITE 200
SAN DIEGO, CA 92117

It is very important that you comply with this letter within SEVEN (7) days. If you do not comply with this demand letter within seven (7) days of receipt, Federal Home Loan Mortgage Corporation may be forced to pursue legal action. If you have questions, please contact Qiana Allen at (858) 750-7600 or by fax at (619) 590-1385. Thank you in advance for your cooperation.

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

**EXHIBIT 3**

PITE
DUNCAN, LLP

December 23, 2010
Page 2

THIS NOTICE SUPERCEDES ALL PRIOR NOTICES OF TERMINATION SERVED.

Dated: December 23, 2010                    PITE DUNCAN, LLP

                                            *Carla Stalcup*
                                            CARLA M STALCUP
                                            JASON W SHORT

* Information regarding the Ordinance is available by contacting The Council of The City of Richmond. The Council of the City of Richmond is located at 440 Civic Center Plaza, Richmond, CA 94804, telephone (510) 620-6861, online at http://www.ci.richmond.ca.us. If you have questions about your legal rights, please consult with an attorney.

8590618.wpd

# AFFIDAVIT OF MAILING
By Interface Inc.
4241 Ponderosa Ave, Suite G
San Diego, CA  92123

Reference No:        000028-007221
Mailing Number:      0001431-01

STATE OF CALIFORNIA         }
                            } SS
COUNTY OF SAN DIEGO         }

I,_____**Brendan McMullen**_____, being duly sworn, depose and say:

I am and at all times herein mentioned a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California:

That at the request of PD Evictions on 12/23/2010, I deposited in the United States mail a copy of the attached document, in separate sealed envelopes, in accordance with the checked mailing classes defined below, postage prepaid, to the address list on exhibit A, attached hereto and made a part hereof.

☒ First Class          ☐ Certified
☒ Certified Return     ☐ Registered          ☐ Registered International

Affiant

DMailAffidavit.doc                                                    Rev. 3/24/05

Exhibit A to Affidavit of Mailing

| | | |
|---|---|---|
| 12/23/2010 | Sender: | PD Evictions<br>4375 Jutland Drive, Suite 200<br>San Diego CA 92117 |
| Postal Class: | Certified - Ret | |
| Type of Mailing: | Window | |

Affidavit Attachment 0001431-01 000 12101022 PD_Evict000254

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 71969002484003388576<br>0 | | Kai Roberts | 556 8th Street Apt A | Richmond, CA 94801 |
| 71969002484003388583<br>1 | | All Unknown Occupants | 556 8th Street Apt A | Richmond, CA 94801 |

Exhibit A to Affidavit of Mailing

12/23/2010      Sender:      PD Evictions
4375 Jutland Drive, Suite 200
San Diego CA 92117

Postal Class:    First Class

Type of Mailing:    Window

Affidavit Attachment: 0001431-01 000 12101022 PD_Evict000254

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 11959002484003505807. | 0 | Kali Roberts | 556 8th Street Apt A | Richmond, CA 94801 |
| 11959002484003508338 | 1 | All Unknown Occupants | 556 8th Street Apt A | Richmond, CA 94801 |

## PITE
## DUNCAN
LLP

**San Diego**
Steven W. Pite CA/NV/HI
John D. Duncan CA/NV
Peter J. Salmon
CA/NV/UT/WA
David E. McAllister
AZ/CA/NV/OR/UT/WA

Rachelle L. Stanford
AZ/CA/OR/WA
Josephine E. Salmon
AK/AZ/CA/NY
Laurel I. Handley
AZ/CA/OR/NV
Daniel R. Gomez CA/TX
Eddie R. Jimenez CA/NV/TX
Susan L. Patil AK/CA/WA
Douglas A. Toleno AK/CA
Chang M. Nguyen CA/NV
Casper J. Rankin CA
Charles A. Correia CA
Melodie A. Wallace CA
Brian A. Paino CA/NV/WA
Christopher M. McDermott
CA
Jillian A. Benbow CA
Thomas N. Abbott CA
Tracy D. Mabry TX
Drew A. Callahan CA
Natalie T. Nguyen CA
Alyssa K. McCarthy AZ/CA
Caroline M. Robert CA
Gunall M. Anderson CA
Ellen Chu CA/NV
Jane A. Garcia CA
Erin L. Laney CA
Angela M. Pannunzio CA
Jacque A. Gruber CA
John B. Acierno CA
William L. Partridge CA
Christopher L. Peterson CA
Karla L. Johnson CA

**Mailing**
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

**Overnight**
4375 Jutland Drive, Suite 200
San Diego, CA 92177

Ph: (858) 750-7600
Fax: (619) 590-1385

**Orange County**
Bruce J. Quittman CA
Kerry W. Franich CA/NV
Shane J. Meader CA
Bryan T. Brown CO/TX
Michael A. Fox CA
1120 N. First St. Ste. 420
Santa Ana, CA 92703
Ph: (714) 361-3821
Fax: (714) 361-3846

**Arizona Office**
Charles L. Firestein
Phoenix, AZ

**Hawaii Office**
David B. Rosen
Honolulu, HI

**Washington Office**
Seattle, WA

**Texas Office**
William P. Warwar, Jr.
San Antonio, TX

January 1| , 2011

Kat Roberts and ALL OCCUPANTS
556 8TH STREET APT A
RICHMOND, CA 94801

## FINAL NOTICE

Re:   Property:   556 8th Street Apt A, Richmond, CA 94801
      Our File No.: 000028-007221

Dear Occupants:

This office represents Federal Home Loan Mortgage Corporation. On or about 9/23/2010, Federal Home Loan Mortgage Corporation purchased the above-referenced property at a foreclosure sale. Ira G Ross Sr. no longer owns the property. Despite the foreclosure, tenants have specific rights pursuant to the Ordinance No. 16-09 N.S. Richmond Municipal Code to Residential Eviction Control For Properties in Foreclosure "Ordinance", and the Ordinance may apply to your occupancy of the property if you are a tenant*.

Our office has attempted to contact you on several occasions, but you failed to respond to our notices. If you wish to remain as a tenant at this property, YOU MUST CONTACT OUR OFFICE WITHIN FIVE (5) DAYS of receipt of this letter and timely make your rent payments for Federal Home Loan Mortgage Corporation's benefit. Please also complete and return the "Change in Ownership Occupant Questionnaire," provide a copy of your written lease and proof or rent payments. We believe that your rent is $800.00 per month and your rent payment for 10/1/2010 through 1/31/2011 is due now. Please send a certified check or money order payable to Pite Duncan, LLP Trust Account. Please mail the above information and your rent payment to:

            PITE DUNCAN, LLP
            ATTN: EVICTION DEPT.
            RE; FILE NO. 000028-007221
            4375 JUTLAND DR., SUITE 200
            SAN DIEGO, CA 92117

If you do not comply with this demand letter within FIVE (5) DAYS of receipt, Federal Home Loan Mortgage Corporation will pursue legal action against you to regain possession of the premises.

If you have questions, please contact Ramon Perez at (858) 750-7600 or by fax at (619) 590-1385. Thank you in advance for your cooperation.

Dated: January 1| , 2011            PITE DUNCAN, LLP

                                    *Carla Stalcup*
                                    JASON W. SHORT,
                                    CARLA M. STALCUP

* Information regarding the Ordinance is available by contacting The Council of The City of Richmond. The Council of the City of Richmond is located at 440 Civic Center Plaza, Richmond, CA 94804, telephone (510) 620-6861, online at http://www.ci.richmond.ca.us. If you have questions about your legal rights, please consult with an attorney.

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
See above or visit www.piteduncan.com re individual attorney admissions.

**EXHIBIT 4**

January 14, 2011        Advanced Attorney Services, Inc. fax (619) 299-5055

| William L. Partridge<br>PITE DUNCAN, LLP<br>4375 JUTLAND DRIVE, SUITE 200 P.O. BOX 17934 SAN DIEGO, CA 92177<br><br>TELEPHONE NO.: (858) 750-7600    FAX NO. (Optional): (619) 590-1385<br>E-MAIL ADDRESS (Optional): | | SBN: 260166 | FOR COURT USE ONLY |
|---|---|---|---|
| **PROOF OF SERVICE** | HEARING DATE: | DAY: | TIME: | DEPT.: | **BY FAX**<br>Ref No. or File No.:<br>000025-007221 |

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND I SERVED COPIES OF THE:

**Final Notice; Change in Ownership Occupant Questionnaire; Trustee's Deed Upon Sale**

NAME OF OCCUPANT: **KAI ROBERTS AND ALL OCCUPANTS**

DATE OF POSTING: **January 12, 2011**
TIME OF POSTING: **05:23 pm**

DATE OF MAILING: **January 12, 2011**
PLACE OF MAILING: **BERKELEY**

ADDRESS OF PROPERTY: **556 8TH STREET APT A,**
**RICHMOND, CA 94801**
**(HOME)**

MANNER OF SERVICE:
   By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to be found at any know place of residence or business of said tenants; and mailing a copy by first class mail, postage pre-paid, and depositing said copies in the United States Mail, in a sealed envelope, addressed as stated above. CCP 1162(3).

Fee for Service: **130.50**
  County: **CONTRA COSTA**
  Registration No.: **511**
  **Advanced Attorney Services, Inc.**
  **3500 Fifth Ave.**
  **San Diego, CA 92103**
  **(619) 299-2012**

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on **January 14, 2011.**

Signature: _____
           **JOHN M. BUTLER**

**PROOF OF SERVICE**

982(a)(23)(New July 1, 1987)                                             Order#: 287221N2/30DAY



**PITE DUNCAN LLP**

*San Diego*

Steven W. Pite *CA/NY/WA*
John D. Duncan *CA/CO/WA*
Peter J. Salmon
*CA/ID/UT/WA*
David E. McAllister
*AZ/CA/NJ/OR/UT/WA*

Rochelle L. Stanford
*AZ/CA/OR/WA*
Josephine R. Salmon
*AK/ID/CA/NV*
Laurel I. Handley
*AZ/CA/ID/NV*
Daniel R. Gamez *CA/TX*
Eddie R. Jimenez *CA/NV/TX*
Susan L. Petit *AX/CA/WA*
Douglas A. Toleno *AZ/CA*
Cuong M. Nguyen *CA/NV*
Caiper J. Rankin *CA*
Charles A. Correia *CA*
Melodie A. Wahono *CA*
Brian A. Paino *CA/CO/NJ*
Christopher M. McDermott
*CA*
Jillian A. Benbow *CA*
Thomas N. Abbott *CA*
Tracy D. Mabry *TX*
Drew A. Callahan *CA*
Natalie T. Nguyen *CA*
Alyssa K. MacCevicca *AZ/CA*
Caroline M. Robari *CA*
Genell M. Anderson *CA*
Ellen Cha *CA/AK*
Jose A. Garcia *CA*
Bris L. Laney *CA*
Angela M. Pontaniol *CA*
Jacque A. Gruber *CA*
John B. Acierno *CA*
William L. Partridge *CA*
Christopher L. Peterson *CA*
Katie L. Johnson *CA*

*Mailing*
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

*Greenwich*
4375 Jutland Drive, Suite 200
San Diego, CA 92177

Ph.: (858) 750-7600
Fax: (619) 590-1385

*Orange County*
Kerry W. Franich *CA/NV*
Elena J. Moeder *CA*
Bryce T. Bowe *CO/TX*
Mishca J. Fox *CA*
1820 E. First St., Ste. 420
Santa Ana, CA 92705
Ph: (714) 285-3223
Fax: (714) 285-2668

*Arizona Office*
Charles L. Firestein
Phoenix, AZ

*Hawaii Office*
David B. Rosen
Honolulu, HI

*Washington Office*
Seattle, WA

*Texas Office*
William F. Weaver, Jr.
San Antonio, TX

February 16, 2011

## THREE DAY NOTICE TO PAY RENT OR QUIT

TO : KAI ROBERTS
ALL PERSONS IN POSSESSION
556 8TH STREET APT A
RICHMOND, CA 94801

Re:     Property:     556 8th Street Apt A, Richmond, CA 94801
        Our File No.: 000028-007221

WITHIN THREE DAYS, after the service on you of this notice, you are hereby required to pay the delinquent rent for above-described premises, of which you now hold possession, in the total sum of $4,00.00 being the rent for the period of:

October 1, 2010 through October 31, 2010 in the sum of $800.00.
November 1, 2010 through November 30, 2010 in the sum of $800.00.
December 1, 2010 through December 31, 2010 in the sum of $800.00.
January 1, 2011 through January 31, 2011 in the sum of $800.00.
February 1, 2011 through February 28, 2011 in the sum of $800.00.

OR QUIT AND DELIVER UP POSSESSION of the above-described premises to the landlord.

If you do not pay $4,000.00 in full within three (3) days, you are hereby required to deliver up possession of the above-described premises, within 3 days after service of this notice, to the landlord or landlord's agent. If you do not comply, you are further notified that the landlord does hereby elect to declare a forfeiture of the Lease or Rental Agreement under which you now hold possession of the aforesaid premises. The landlord will institute legal proceedings to recover possession of the aforesaid premises and rent together with treble damages and such other damages as may be allowed by law, should you fail to comply.

**Please make checks payable to Pite Duncan, LLP Trust Account**

All rent payments must be sent by mail only to:

PITE DUNCAN, LLP
ATTN: EVICTION DEPT.
RE: FILE NO. 000028-007221
4375 Jutland Drive, Suite 200
P.O. Box 17934
San Diego, CA 92177 -0934

Rent payments are accepted between the hours of 9 a.m. and 5 p.m. Monday to Friday.

If you have any questions about this notice, please contact Tiffany Marshall at (858) 768-2690 or by fax at (619) 590-1385.

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

EXHIBIT 5

PITB
DUNCAN, LLP

February 16, 2011
Page 2

This notice is being served in compliance with the Ordinance No. 16-09 N.S. Richmond Municipal Code to Residential Eviction Control For Properties in Foreclosure "Ordinance" The landlord asserts that the landlord has good cause and acts in good faith in seeking possession of the above-described premises pursuant to Ordinance No. 16-09 N.S. Information regarding the Ordinance is available by contacting The Council of The City of Richmond. The Council of the City of Richmond is located at 440 Civic Center Plaza, Richmond, CA 94804, telephone (510) 620-6861, online at http://www.ci.richmond.ca.us. If you have questions about your legal rights, please consult with an attorney.

THIS NOTICE SUPERCEDES ALL PRIOR NOTICES OF TERMINATION SERVED.

Dated: February 16, 2011

PITB DUNCAN, LLP

JASON W. SHORT,
RENEE BELCASTRO

February 24, 2011                         Advanced Attorney Services, Inc. fax (619) 299-9055

| William L. Partridge, Jason W. Short | | SBN: 260155, 263667 | | | FOR COURT USE ONLY |
| PITE DUNCAN, LLP | | | | | |
| 4375 JUTLAND DRIVE, SUITE 200 P.O. BOX 17934  SAN DIEGO, CA 92177 | | | | | |

TELEPHONE NO.:(858) 750-7800      FAX NO. (Optional): (619) 590-1385
E-MAIL ADDRESS (Optional):

|  |  |  |  |  | BY FAX |
| **PROOF OF SERVICE** | HEARING DATE: | DAY: | TIME: | DEPT.: | Ref No. or File No.: 000026-007221 |

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND  I SERVED COPIES OF THE:

3 Day Notice to Pay or Quit; Change in Ownership Occupant Questionnaire; Trustee's Deed Upon Sale;

NAME OF OCCUPANT:   KAI ROBERTS AND ALL OCCUPANTS, TENANTS OR SUBTENANTS

DATE OF Posting:   February 20, 2011
TIME OF Posting:   08:58 am

DATE OF MAILING:   February 20, 2011
PLACE OF MAILING:   BERKELEY

ADDRESS OF PROPERTY:   556 8TH ST, APT A,
RICHMOND, CA 94801
(HOME)

MANNER OF SERVICE:
By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to b
found at any know place of residence or business of said tenants; and mailing a copy by first class mail, postage pre-paid, an
depositing said copies in the United States Mail, in a sealed envelope, addressed as stated above. CCP 1162(3).

Fee for Service: 130.50
County:  CONTRA COSTA
Registration No.:  511
Advanced Attorney Services, Inc.
3500 Fifth Ave.
San Diego, CA 92103
(619) 299-2012

I declare under penalty of perjury under the laws of the
The State of California that the foregoing information
contained in the return of service and statement of
service fees is true and correct and that this declaration
was executed on February 24, 2011.

Signature: _____

JOHN M. BUTLER

**PROOF OF SERVICE**

# EXHIBIT D

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| RENEE BELCASTRO, SBN 270492<br>JASON W. SHORT, SBN 263867<br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17934, San Diego, CA 92177<br>TELEPHONE NO.: (858) 750-7600   FAX NO. *(Optional):* (619) 590-1385<br>EMAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Federal Home Loan Mortgage Corporation | F I L E D<br><br>JUL 18 2011<br><br>K. TORRE CLERK OF THE COURT<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>COUNTY OF CONTRA COSTA RICHMOND<br>By_____, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 100 37th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Richmond, CA 94805
BRANCH NAME: County of Contra Costa - Richmond

| PLAINTIFF/PETITIONER: Federal Home Loan Mortgage Corporation | |
|---|---|
| DEFENDANT/RESPONDENT: Kal Roberts, et al | |

| REQUEST FOR DISMISSAL | CASE NUMBER: |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br>  ☐ Motor Vehicle  ☐ Other<br>☐ Family Law  ☐ Eminent Domain<br>☒ Other *(specify):* **UNLAWFUL DETAINER** | RS 11-0406 |

– A conformed copy will not be returned by the clerk unless a method of return is provided with the document. –

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) ☐ With prejudice  (2) ☒ Without prejudice
   b. (1) ☐ Complaint  (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                    on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                    on *(date):*
      (5) ☒ Entire action of all parties and all causes of action
      (6) ☐ Other *(specify):**

2. *(Complete in all cases except family law cases.)*
   ☒ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed.)*

DATE: July 13, 2011

JASON W. SHORT                                         ▶ _____
                                                                              (SIGNATURE)
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)        Attorney or party without attorney for:
*If dismissal requested is of specified parties only of specified causes of action      ☒ Plaintiff/Petitioner      ☐ Defendant/Respondent
only, or of specified cross-complaints only, so state and identify the parties,            ☐ Cross-Complaint
causes of action, or cross-complaints to be dismissed.

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
   Date:

                                                                              ▶ _____
                                                                              (SIGNATURE)
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)        Attorney or party without attorney for:
**If a cross-complaint – or Response (Family Law) seeking affirmative       ☐ Plaintiff/Petitioner      ☐ Defendant/Respondent
relief – is on file, the attorney for cross-complaint (respondent) must          ☐ Cross-Complaint
sign this consent if required by Code of Civil Procedure section 581 (i)
or (j).

*(To be completed by clerk.)*
4. ☑ Dismissal entered as requested on *(date):*  JUL 18 2011
5. ☐ Dismissal entered on *(date):*                                         as to only *(name):*
6. ☐ Dismissal not entered as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed ☐ means to return conformed copy

Date:   JUL 18 2011      Clerk, by _____L. PRITCHETT_____, Deputy

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. July 1, 2009] | REQUEST FOR DISMISSAL | Code of Civil Procedure, § 581 et seq.;<br>Gov. Code, § 68637 (c); Cal. Rules of Court, rule<br>3.1390<br>www.courtinfo.ca.gov |
|---|---|---|

CIV-110

| PLAINTIFF/PETITIONER: Federal Home Loan Mortgage Corporation | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Kai Roberts, et al. | RS 11-0406 |

### Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name)*: Kai Roberts
2. The person in item 1 *(check one)*:
   a. ☒ is not recovering anything of value by this action.
   b. ☐ is recovering less than $10,000 in value by this action.
   c. ☐ is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*
3. ☒ All court fees and costs that were waived in this action have been paid to the court *(check one)*: ☐ Yes  ☒ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

DATE: July 13, 2011

▶

JASON W. SHORT
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY MAKING DECLATATION)

(SIGNATURE)

### REQUEST FOR DISMISSAL

1 | Federal Home Loan Mortgage vs. Kai Roberts
Superior Court of California County of Contra Costa - Richmond
2 | **Case No(s).RS 11-0406**

3 | **DECLARATION OF SERVICE**

4 |     I, the undersigned, declare: I am, and was at the time of service of the papers herein referred
5 | to, over the age of 18 years, and not a party to this action. My business address is 4375 Jutland
Drive, Suite 200; P.O. Box 17934, San Diego, CA 92117-0934.

6 |     On $\underline{07|15|11}$ , I served the following document(s):

7 | Request for Dismissal

8 | on the parties in this action addressed as follows:

9 | **Sheena Wahawan**
**1814 Franklin Street, Suite 210**
10 | **Oakland,CA 94612**

11 |    **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above. I am
readily familiar with the firm's practice of collection and processing correspondence for
12 | mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary
course of business. I am aware that on motion of party served, service is presumed
13 | invalid if postal cancellation date or postage meter date is more than one day after date of
deposit for mailing in affidavit.

14 |
15 |    **BY CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed as
indicated above via certified mail, return receipt requested.

16 |    **BY FACSIMILE:** I personally sent to the addressee's facsimile number a true copy of
the above-described document(s). I verified transmission with a confirmation printed out
17 | by the facsimile machine used. Thereafter, I placed a true copy in a sealed envelope
addressed and mailed as indicated above.

18 |
19 |    **BY FEDERAL EXPRESS:** I placed a true copy in a sealed Federal Express envelope
addressed as indicated above. I am familiar with the firm's practice of collection and
processing correspondence for Federal Express delivery and that the documents served
20 | are deposited with Federal Express this date for overnight delivery.

21 |     I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
22 |
23 |     Executed this   **15**   day of July, 2011, at San Diego, California.

24 | JENNA FILLET

25 |

26 |
10516424.wpd
27 |

28 |

# EXHIBIT E

**TICOR TITLE**
**RIVERSIDE**

**RECORDING REQUESTED BY:**
Ticor Title
Order No. 733342
Escrow No. 12-25907-TF
~~Mail taxes to~~
AND WHEN RECORDED MAIL TO:
RAM PARKASH VOHRA
2372 18TH STREET
SAN PABLO, CA 94806

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2012-0037449-00
Check Number
Friday, FEB 17, 2012 09:22:00
.CCC    $83.05:RIC   $532.00:S34   $10.00
'MOD    $1.00:REC   $11.00:FTC   $0.00
'RED    $1.00:ERD   $1.00:
'Ttl Pd   $639.05      Rcpt # 0001181560

Parcel No. 534-320-030

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $83.05 and
CITY $~~500.00~~ ~~#592~~

☒ Computed on full value of property conveyed, or
☐ Computed on full value less liens or encumbrances remaining at the time of sale.
☐ Unincorporated area:            X    Richmond, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Federal Home Loan Mortgage Corporation

hereby GRANT(S) to   **Ram Parkash Vohra, a Married Man as his sole and separate property**

the following described real property in the County of **Contra Costa**, State of California:

**THE SOUTHERN 8 FEET OF LOT 10 AND ALL OF LOT 11, BLOCK 7, MAP OF TERMINAL TRACT FILED
FEBRUARY 19, 1907, BOOK B OF MAPS, PAGE 36, CONTRA COSTA COUNTY RECORDS.**

Date:   February 9, 2012

Federal Home Loan Mortgage Corporation

_____  Zachariah J. Ruhl
By: Pite Duncan, LLP, A California Limited
Liability Partnership as its Attorney-in-Fact

STATE OF CALIFORNIA                         }
                                            }S.S.
COUNTY OF SAN DIEGO                         }

On _feb 10, 2012_____, before me, _Judith J Perron____ Notary Public,
personally appeared _Zachariah J. Ruhl____ who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____          (Seal)

JUDITH J. PERRON
COMM. #1929342
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Apr 16, 2015

Mail Tax Statement to: SAME AS ABOVE

# EXHIBIT B

1 | PETER J. SALMON (SBN 174386)
CUONG M. NGUYEN (SBN 248586)
2 | ERIC TSAI (SBN 273056)
PITE DUNCAN, LLP
3 | 4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
4 | SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
5 | FACSIMILE: (619) 590-1385
E-MAIL: etsai@piteduncan.com
6 |
Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION
7 |

8 | ## UNITED STATES DISTRICT COURT

9 | ## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| 10 AYAN KAI ROBERTS, KERMANISHA SANDERS, | Case No. |
| 11 Plaintiffs, | **NOTICE OF REMOVAL OF ACTION** |
| 12 v. | **[12 U.S.C. § 1452(f)]** |
| 13 DWAYNE BARTELS, BARTELS | |
| 14 PROPERTY MANAGEMENT, JACK BURNS, SR., JACK BURNS, JR., | |
| 15 SECURITY PACIFIC REAL ESTATE; IRA G. ROSS, SR., FEDERAL HOME LOAN | |
| 16 MORTGAGE CORPORATION, and its successors and assigns, and DOES 1-XX, | |
| 17 inclusive, | |
| 18 Defendants. | |

19 | **TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND**

20 | **THEIR ATTORNEYS OF RECORD:**

21 | **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1331 & 1442, and 12 U.S.C. §

22 | 1452(f), Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac")

23 | hereby gives notice of the removal of this action from the Superior Court of California in and for

24 | Contra Costa County, where it was pending, to the United States District Court for the Northern

25 | District of California. As grounds for this removal, Freddie Mac shows unto the Court the

26 | following:

27 | 1. The Plaintiffs AYAN KAI ROBERTS and KERMANISHA SANDERS, commenced

28 | this action against Freddie Mac and others in the Superior Court of California for Contra Costa

1 County, on or about April 20, 2012 as Case No. MSC11-02181("State Court Action"). Plaintiffs'
2 Complaint alleges various causes of action against Freddie Mac and others in connection with certain
3 real property known as 556 Eighth Street, Upper Unit, Richmond, CA 94801.

4     2.       Freddie Mac is a United States corporation chartered by an Act of Congress organized
5 and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, et seq.,
6 with its principal place of business located in McLean, Virginia.

7     3.       12 U.S.C. § 1452(f) provides that Freddie Mac "shall be deemed to be an agency
8 included in sections 1345 and 1442 of such Title 28." Section 1452(f) of Title 12 further provides,
9 in pertinent part, that any civil action in a state court to which Freddie Mac is a party may, at any
10 time before trial, be removed to the appropriate United States District Court.

11     4.       28 U.S.C. § 1442(a) does not require Freddie Mac to notify or obtain the consent of
12 any other defendant in this action in order to remove the entire case to federal court. See 28 U.S.C.
13 1442(a); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) (stating that
14 "[w]hereas all defendants must consent to removal under section 1441..., a federal officer or agency
15 defendant can unilaterally remove a case under section 1442...") (citations omitted); Ely Valley
16 Mines, Inc. v. Hartford Accident & Indemnity Co., 644 F. 2d 1310, 1315 (9th Cir. 1981) (stating that
17 "§ 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants
18 must join in the removal petition").

19     5.       Freddie Mac is a party to the State Court Action as referenced above, and no trial of
20 the action has yet taken place. The United States District Court for the Northern District of
21 California is the federal judicial district and division embracing Contra Costa County in which the
22 property at issue in this case is situated. See 28 U.S.C. § 84(a). Freddie Mac is therefore entitled
23 to remove that action to this Court. Attached hereto as **Exhibit A,** and incorporated by reference
24 herein, are copies of all records and proceedings from the State Court Action including the Summons
25 and Complaint.

26     6.       Concurrently with the filing of this Notice of Removal, by means of the Notice to
27 Adverse Parties of Removal filed in the State Court Action and attached hereto as **Exhibit B,**
28 Freddie Mac is giving written notice to all known parties, and to the Superior Court of California in

-2-
**NOTICE OF REMOVAL OF ACTION**

1   and for Contra Costa County, of (i) this removal; (ii) the fact that this case is to be docketed in this

2   Court; and (iii) that this Court shall hereafter be entitled to grant all relief to Freddie Mac as is proper

3   under the circumstances, all in accordance with 12 U.S.C. § 1452 and such local rules as may be

4   applicable.

5                                                Respectfully Submitted,

6                                                PITE DUNCAN, LLP

7

8   Dated: December 3, 2012
                                                 ERIC TSAI
9                                                Attorneys for Defendant
                                                 FEDERAL   HOME   LOAN   MORTGAGE
10                                               CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        -3-
                            NOTICE OF REMOVAL OF ACTION